UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PEOPLE FOR PEARCE and STEVE E. PEARCE,<br>U.S. Representative for New Mexico's Second<br>Congressional District<br>_____<br>Plaintiff(s)<br>v.<br><br>MAGGIE T. OLIVER, in her individual capacity and<br>her official capacity as Secretary of State of the State<br>of New Mexico; HECTOR H. BALDERAS, JR., in<br>his individual capacity and his official capacity as<br>Attorney General of the State of New Mexico; and<br>DIANNA LUCE, in her official capacity as Fifth<br>Judicial District Attorney of New Mexico,<br>_____<br>Defendant(s) | Case No. 2:17-cv-00752-JCH-SMV |

### ATTORNEY GENERAL HECTOR BALDERAS'S LIMITED RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COMES NOW, Defendant New Mexico Attorney General Hector Balderas by and through his counsel Rebecca C. Branch Assistant Attorney General and requests that this Court deny Plaintiffs' Motion for Preliminary Injunction.

### I. INTRODUCTION

Attorney General Hector Balderas has pursued an aggressive agenda to promote public integrity and fight corruption. The Attorney General's efforts have gone to the investigation and prosecution of state officials for various abuses of the public trust, including violations of the New Mexico Campaign Reporting Act. NMSA 1978, § 1-19-25 *et seq*. Each of these cases was brought following a referral, complete investigation, and thorough legal analysis. Because the Attorney General is the only statewide official in New Mexico with criminal and civil authority in these matters, NMSA 1978, § 1-19-34.6 (1995); NMSA 1978, § 1-19-36 (1995), Courts

should carefully scrutinize any pre-enforcement attempt to limit the Attorney General's ability to independently investigate the use and misuse of money in politics.

In this case, Plaintiffs seek to preempt the Attorney General's authority with a lawsuit and request for preliminary injunction that is not only pre-enforcement, it is pre-investigative and even pre-referral. Although Plaintiffs have not pleaded a single fact suggesting that the Attorney General has initiated a review of their campaign finances, they seek a broad injunction to prevent scrutiny of their proposed transfer of a million-dollar political war chest from a federal account to a state account.

The Plaintiffs' preemptive strike, however, fails for two reasons. First, as discussed briefly below and more fully in a forthcoming motion to dismiss, the Plaintiffs lack standing to sue and enjoin the Attorney General at this time. *See, e.g.*, *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). They simply have not alleged a credible threat of prosecution that would allow them to obtain a pre-enforcement injunction against the Attorney General. *See, e.g., id.* Second, even if they had standing, the Plaintiffs do not meet the burden necessary to receive a preliminary injunction. *See, e.g.*, *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). The Plaintiffs have not shown a likelihood of success on the merits because they misread *New Mexicans for Bill Richardson v. Gonzales*, Case No. 93-CV-1135-JAP-RLP (D.N.M.) (Parker, J.), they misvalue the interests and harms at stake, and, perhaps most importantly, they ignore the fact that a premature injunction against the Attorney General is contrary to the public interest.

Ultimately, enjoining the Attorney General at this time requires the extraordinary conclusion that New Mexico's chief law enforcement officer has no grounds to examine the proposed transfer of more than one million dollars into a gubernatorial campaign account.

## II. ARGUMENT

**A. Plaintiffs lack standing to seek a preliminary injunction against the Attorney General.**

Plaintiffs may only obtain an injunction against a defendant if the Plaintiffs have standing to seek any relief at all from that defendant. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) (brackets omitted).

To satisfy the "injury-in-fact" element of standing, a plaintiff must demonstrate that "there exists a credible threat of prosecution thereunder." *Brown*, 822 F.3d at 1165. To be credible, a threat must be "well-founded and not imaginary or wholly speculative." *Id.* (internal quotation marks omitted). "When a plaintiff challenges the validity of a criminal statute under which he has not been prosecuted, he must show a 'real and immediate threat' of his future prosecution under that statute to satisfy the injury in fact requirement." *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004).

The Plaintiffs do not meet this bar. The Plaintiffs do not allege a single fact that would support an inference that the Attorney General is threatening imminent prosecution. The fact that the Plaintiffs have had some dealings with the Secretary of State is not enough. The chain of causation must flow to every defendant from which the Plaintiffs seek relief. Therefore, to have standing to enjoin the Attorney General, the Plaintiffs must allege an injury "fairly traceable" to an action by the Attorney General. *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007). They have not done this. The complaint and motion for preliminary injunction are both bereft of

facts about what the Attorney General has actually done to instill a fear of prosecution in the Plaintiffs. The fact that generally the Attorney General has the authority to enforce the Campaign Reporting Act is not enough to establish a credible threat of prosecution

A review of the Attorney General's public integrity program shows how speculative and tenuous the Plaintiffs' position truly is. Prior to bringing any criminal prosecution for campaign-related offenses, the Attorney General conducts a complete review and investigation. Investigations into these matters typically begin with a referral, either from the Secretary of State or from private individuals. Upon receiving a referral, the office screens the matter to ensure that the allegations fall within the Attorney General's jurisdiction and that no conflicts of interest are present. The office then conducts a full review of the allegations. Depending on the facts of the case, the review may expand into a full investigation involving certified law enforcement officers, criminal analysts, and specialists such as forensic accountants.

This investigative team conducts interviews and gathers evidence such as campaign disclosures, bank records, and other documents.  If necessary, the investigative team may use warrants or grand jury subpoenas to collect the necessary evidence. Interviews could include campaign staff, contributors, and vendors, as well as third parties such as the custodians of records and experts at the Secretary of State's office.

Once the necessary evidence has been collected, processed, and analyzed, prosecutors within the office make a legal determination whether the evidence establishes probable cause for the suspected crime. Only then would criminal charges be imminent.

Plaintiffs have not alleged that the Attorney General has undertaken the first step in this long process. They do not even allege that the Attorney General has received a referral that could trigger initial screening for investigation that might someday, after evidence collection and

analysis, result in a prosecution. Nor have they alleged that the Attorney General has prosecuted any other candidate or campaign for anything similar to the federal-to-state transfer they propose. *Cf. Bronson,* 500 F.3d at 1108-09 (prior prosecutions factor in credible-threat analysis). Plaintiffs expound at length on the benefits that the million-dollar war chest would bring to their efforts. But they cannot "satisfy the credible-threat-of-prosecution test by relying on evidence of their compliance with the challenged statute." *Colorado Outfitters Ass'n v. Hickenlooper,* 823 F.3d 537, 548 (10th Cir. 2016). The mere existence of a statute does not create a credible threat of prosecution. *Brown*, 822 F.3d at 1165.

Any fear of imminent prosecution is therefore imaginary, and Plaintiffs' complaint and request for a preliminary injunction are insufficient to establish a credible threat. *Bronson*, 500 F.3d at 1109. Therefore, regardless of the actions of the other parties, Plaintiffs have not established standing to enjoin the Attorney General. Finally, for reasons to be discussed to the forthcoming motion to dismiss, absolute and qualified immunity bar Plaintiffs from suing the Attorney General in his individual capacity. *See, e.g., Nielander v. Board of County Com'rs of County of Republic, Kan*., 582 F.3d 1155, 1164-66 (10th Cir. 2009).

**B. Plaintiffs fail to establish the facts necessary for a preliminary injunction against the Attorney General.**

To receive a preliminary injunction, it is the Plaintiffs' burden to "establish the following factors: (1) a substantial likelihood of prevailing on the merits, (2) irreparable harm unless the injunction is issued, (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens*, 839 F.3d at 1281. To succeed, the Plaintiffs must meet each of these elements. "Because a preliminary injunction is an extraordinary remedy, the

movant's right to relief must be clear and unequivocal.*" Id*. (internal quotation marks omitted). Plaintiffs have not shown any fact establishing their right to relief, let alone a clear and unequivocal right to relief, and so they have failed to establish the necessary elements for such an extraordinary remedy.

To obtain a preliminary injunction, the Plaintiffs must show that they have a "substantial likelihood" of prevailing on the merits their claims. *Diné Citizens*, 839 F.3d at 1281-82. Plaintiffs are unlikely to succeed on the merits of this litigation because their arguments form a tenuous chain that simply does not lead to obtaining relief against the Attorney General. Every link in the chain of argument fails.

First, for reasons discussed above, the Plaintiffs lack standing to sue the Attorney General. This means they will not ultimately obtain any relief against him.

Next, the Plaintiffs' argument rests largely on the *Richardson* case, Case No. 93-CV-1135-JAP-RLP, which evaluated a different statute, not the one the plaintiffs challenge in this litigation. *Richardson* involved NMSA 1978, § 1-19-29.1(C) (1995), a complete ban on transfers of federal contributions to state campaign accounts. The Plaintiffs, however, are not challenging Section 1-19-29.1(C), they are challenging the contribution limits under NMSA 1978, Section 1-19-34.7 (2010), which did not exist in New Mexico law at the time *Richardson* was decided. The Plaintiffs' argument against this section boils down to the idea that a contribution limit--which applies equally to all contributors to state candidate committees--functions as a total ban because their war chest is so large. *Cf*. Complaint at ¶ 4 (Doc. No. 1).

The Plaintiffs' next point depends on re-characterizing the state contribution limit as an expenditure limit. *See* Plaintiff's Motion for Preliminary Injunction at 12 (Doc. No. 16). The statute, on its face, is a contribution limit and should be analyzed as such. § 1-19-34.7.

Nevertheless, based on their interpretation, the Plaintiffs spend pages describing and attacking a letter they received from the Secretary of State's office, concluding that "the Secretary's interpretation of the [Campaign Reporting Act] is unconstitutional. . ." *See* Plaintiff's Motion for Preliminary Injunction at 20 (Doc. No. 16).

The Plaintiffs, however, offer no reason why they expect to succeed in this litigation *against the Attorney General*. The Plaintiffs have done nothing to show a "clear and unequivocal" right to relief from the Attorney General. *Diné Citizens*, 839 F.3d at 1281. They seem to assume that success against one defendant is success against all, but offer no support for such an idea. Further, because of the flaws in their analysis discussed above, they have not shown a likelihood of success even with respect to the Secretary.

The plaintiffs' lack of analysis with respect to the Attorney General is particularly concerning because a preliminary injunction would impose unique burdens on the Attorney General and the public interests he has a statutory duty to protect. *See, e.g.*, § 1-19-34.6; § 1-19-36. In evaluating a request for preliminary injunction, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)) (internal quotation mark omitted).

The public interest in political integrity and preventing corruption is widely recognized. *See, e.g., McCutcheon v. Federal Election Com'n*, 134 S.Ct. 1434, 1441 (2014). This interest, however, does not exist in a vacuum. It depends on law enforcement officers working to determine whether the interest is implicated in any given circumstance.

Contrary to these principles, the Plaintiffs seek a broad injunction preventing the Attorney General from "enforcing the restrictions described in the Blair Letter, from imposing

any limitations on the transfer of funds . . . and from levying any restrictions on the use of those funds" as if those funds were raised in the state system. *See* Plaintiff's Motion for Preliminary Injunction at 23 (Doc. No. 16).

If the Attorney General were to begin an investigation of the Plaintiffs' campaign finances, he would employ the process detailed earlier in this memorandum and develop a sufficient factual record to determine whether the Plaintiffs' conduct implicates the State's interest in preventing corruption.

For example, the Plaintiffs' Finance Director, Andrea Goff, makes numerous assertions in her affidavit about the Plaintiffs' fundraising methods, protections, and limitations. *See* Plaintiff's Motion for Preliminary Injunction Ex. B (Doc. No. 16). If the Attorney General were to investigate the Plaintiffs, these assertions would not be taken at face value. They would be independently verified. Independent verification might include forensic analysis of the flow of funds, interviews to determine what representations fundraisers made to contributors, and whether the Plaintiffs' alleged safeguards are actually sound.

The result of this investigation might show that a million-dollar transfer was entirely consistent with donor intent and clean elections or it might reveal aspects of corruption that are not apparent from a surface-level view. In any event, these issues should not be shielded from scrutiny. The public has a strong interest in the Attorney General performing his statutory functions to oversee the campaign reporting act through full and fair investigations.

Because Plaintiffs brought a lawsuit as a first resort, and now seek a broad injunction, they would deprive New Mexicans of the chance to present a complete factual foundation for any asserted anti-corruption interest.

Finally, the plaintiffs ignore the potential consequences of the preliminary injunction. *See Diné Citizens*, 839 F.3d at 1281 (courts must examine the alleged harms to the movant and balance the hardships between the parties). In addition to the encroachment on the Attorney General's enforcement powers described above, the preliminary injunction could have irreparable consequences in the political system. Although they frame their request as a motion to enjoin state officials, what plaintiffs are really seeking is permission to transfer and spend federal campaign contributions in a state gubernatorial election. This stance carries its own risk of significant irrevocable harm. Once plaintiffs spend the funds, there is little to no chance that the money can be recouped and returned should the courts later decide against the plaintiffs.

### III. CONCLUSION

New Mexico Attorney General Balderas respectfully requests that this Court deny the plaintiffs' motion for preliminary injunction on the grounds that the Plaintiffs lack standing to receive an injunction against the Attorney General and because they fail to meet the elements necessary to receive a preliminary injunction at all.

Respectfully submitted,

By: _/s/ Rebecca C. Branch_____
Rebecca C. Branch
Assistant Attorney General
P.O. Box 1508
Santa Fe, New Mexico 87504-1508
(505) 490-4825
(505) 490-4881 (fax)
rbranch@nmag.gov

I hereby certify that a true and correct copy of the above pleading was served on all attorneys of record through the U.S. District Court's electronic filing system on the 14th day of September, 2017.

__/s/ Rebecca C. Branch_____
Rebecca C. Branch