**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**PEOPLE FOR PEARCE and**
**U.S. REPRESENTATIVE STEVE E. PEARCE,**

      **Plaintiffs,**

**v.**                                        **2:17-cv-00752-KRS-SMV**

**MAGGIE TOULOUSE OLIVER, et al.,**

      **Defendants.**

---

**SECRETARY OF STATE MAGGIE TOULOUSE OLIVER'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs request a preliminary injunction that would operate as a final judgment. According to their own allegations, if Plaintiffs' requested injunction is issued, People for Pearce would contribute its nearly $1 million to Rep. Pearce's state campaign fund, which would then spend this money on Pearce's gubernatorial race. This transfer of funds is a campaign-finance genie that can't be put back in the bottle. If a preliminary injunction is issued and then Defendants prevail at trial, the campaign funds will be spent and Plaintiffs will obtain their desired relief without success on the merits.

This type of preliminary injunction—that effectively resolves the entire litigation— requires an exceedingly high showing to obtain, including clear and unequivocal evidence of the four elements for a preliminary injunction. Plaintiffs have not met that burden. First, Plaintiffs have not established that they are substantially likely to prevail on the merits at trial. Additionally, Plaintiffs have not presented specific evidence documenting the irreparable harm they would suffer

absent this early-stage injunction. Nor have Plaintiffs demonstrated that the State and the public would be unharmed by an order preventing the enforcement of campaign finance laws designed to forestall corruption. Therefore, the extraordinary preliminary injunction that Plaintiffs request and would decide the case should be denied.

## I.    The Factual and Statutory Background.

Plaintiffs' lawsuit challenges the Secretary of State's opinion that contribution limits in New Mexico's Campaign Reporting Act (the "CRA"), N.M. Stat. Ann. §§ 1-19-25 through 1-19-36, apply to Plaintiffs' proposal to deposit the funds from the account of Rep. Pearce's federal campaign committee, People for Pearce ("PFP"), into the account of his state, gubernatorial campaign, Pearce for New Mexico ("PFNM"). (*See* Compl. Injunctive & Decl. Relief, & Attorneys' Fees (ECF No. 1) ("Complaint"), ¶¶ 2, 4; Pls.' Mot. Prelim. Inj. & Memo. Br. Support (ECF No. 16) ("Motion"), at 1–2.) As a result, a brief summary of the laws and actions of the parties at issue is helpful:

### a.   The Challenged Provisions of New Mexico's Campaign Reporting Act.

New Mexico limits the dollar amount of contributions that can be made by a person or entity to a candidate or her committee. In particular, Section 1-19-34.7 of the Campaign Reporting Act limits the amount that a person can contribute to a candidate. N.M. Stat. Ann. § 1-19-34.7(A)(1)(b) (limiting contributions from a person to a candidate for statewide office to $5,000).[1] A "person" whose contributions are limited is defined broadly, including entities. N.M. Stat. Ann.

---

[1] This amount is indexed for inflation. The current contribution limit is $5,500. N.M. Stat. Ann. § 1-19-34.7(D); http://www.sos.state.nm.us/Candidate_And_Pac_Information/Campaign_Finance_Reporting.aspx (accessed Sep. 14, 2017).

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 2 of 24

§ 1-19-26(K). The definition of "contribution" is also broad, encompassing any "gift, subscription, loan, advance or deposit of money … that is made or received for a political purpose. N.M. Stat. Ann. §1-19-26(F). This limitation on contributions by entities to a candidate mirrors the same limitation on contributions from one political committee to another. N.M. Stat. Ann. § 1-19-34.7(A)(2)(b).

>   b.   *The Legislative History of the Campaign Reporting Act.*

The Campaign Reporting Act dates to 1993 and was an effort to adopt "comprehensive election and campaign related legislation" for New Mexico. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1497 (10th Cir. 1995). However, for the law's first sixteen years it contained no limit on the amount of money that persons and entities could contribute to candidates. This included the period of time when the constitutionality of Section 1-19-29.1(C), a portion of the CRA prohibiting transfers of funds from a federal campaign to a state campaign was challenged, in *New Mexicans for Bill Richardson v. Gonzales*. (*See* Complaint, ¶ 47.)

New Mexico's first campaign contribution limits were not enacted until 2009. 2009 N.M. Laws Ch. 68 (S.B. 521) (Apr. 2, 2009) (effective Nov. 3, 2010). The Senate bill proposing these contribution limits was a response to high-profile political corruption scandals in New Mexico. A month before the Legislative session started, a survey of journalists published in the New York Times had named New Mexico the third-most-corrupt state in the Union. *A Survey of Journalists*, New York Times, Dec. 14, 2008.[2] The then-chairman of the Republican Party of New Mexico,

---

[2] The survey results are available at http://www.nytimes.com/imagepages/2008/12/14/weekinreview/20081214_MARSH_GRFK_3.html?action=click&contentCollection=Week%20in%20Review&module=RelatedCoverage&region=EndOfArticle&pgtype=article (accessed Sep. 14, 2017).

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 3 of 24

Harvey Yates, admitted that "[s]candal is epidemic in New Mexico politics right now." Steve Terrell, *Richardson Foundation Donors Remain Undisclosed*, Santa Fe New Mexican, Jan. 20, 2009, at C-3.

On the eve of the 2009 Legislative session, Governor Bill Richardson withdrew from consideration as Commerce Secretary because of a reported federal grand jury investigation regarding an allegation that his administration awarded state contracts in exchange for political contributions. Sheryl Gay Stolberg, *Richardson Won't Pursue Cabinet Post*, N.Y. Times, Jan. 4, 2009, at A1.[3] National scrutiny focused on New Mexico, and many blamed the State's lack of campaign contribution limits for "pay-to-play" corruption scandals. At the time, New Mexico was one of only five states without campaign contribution limits. *See* Stephanie Simon, *New Mexico's Political Wild West*, Wall St. J., Jan. 17, 2009, at A5;[4] James C. McKinley, Jr. & Michael Haederle, *Inquiry Highlights New Mexico's Few Ethics Laws*, N.Y. Times, Jan. 10, 2017, at A16.[5] Therefore, legislation was introduced to impose campaign contribution limits. As the Attorney General's Office noted in the "Fiscal Impact Report" for the initial Senate bill proposing such limits, "placing limits on political contributions is the most effective vehicle for addressing the current 'pay to play' scandals." "Fiscal Impact Report," S.B. 116, 49th Leg., 1st Reg. Sess. (N.M. 2009).[6]

---

[3] http://www.nytimes.com/2009/01/05/us/politics/05richardson.html (accessed Sep. 14, 2017); *see also* Dan Frosch & James C. McKinley, Jr., *Political Donor's Contracts Under Inquiry in New Mexico*, N.Y. Times, Dec. 18, 2008, at A33, available at http://www.nytimes.com/2008/12/19/us/politics/19richardson.html (accessed Sep. 14, 2017).

[4] Available at https://www.wsj.com/articles/SB123233959874194545 (accessed Sep. 14, 2017).

[5] Available at http://www.nytimes.com/2009/01/11/us/11newmexico.html (accessed Sep. 14, 2017).

[6] Available at https://www.nmlegis.gov/Sessions/09%20Regular/firs/SB0116.pdf (accessed Sep. 14, 2017).

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 4 of 24

Campaign contribution limits were passed into law an incorporated into the Campaign Reporting Act.

          *c.*  *The Secretary of State's Legal Opinions Regarding Contributions from a Federal Campaign Fund to a State Campaign Fund.*

The Secretary of State's Office, across administrations, has given consistent guidance to candidates of both major political parties regarding the legality of depositing federal campaign funds into a state campaign fund. In April 2016, Plaintiffs' counsel, William Canfield,[7] asked Secretary of State Brad Winter if "a Federal officeholder [may] transfer funds from a FECA candidate campaign committee to a state candidate campaign committee." June 15, 2016, Letter from Bailey to Canfield, attached to Complaint as Ex. J (ECF No. 1-2, at 72). Secretary Winter's General Counsel, Amy Bailey, answered, "No." *Id.* She opined that "any transfer is … subject to the limits with the applicable state or local laws, i.e. the CRA." This includes "Section 1-19-34.7 [which] created limits on contributions a candidate or political committee may receive," such as the "$5,400 [now $5,500] from a single contributor for each election…." *Id.*

Secretary of State Maggie Toulouse Oliver has also opined to candidates that the CRA's campaign contribution limits apply to transfers of funds from a federal campaign committee to a state campaign committee. In December 2016, Secretary Oliver's office advised Michelle Lujan Grisham, another member of Congress running for governor, that campaign contribution limits apply to attempts to deposit federal campaign funds into a state campaign. June 16, 2017, Email from Blair to Goff, attached to Complaint as Ex. K (ECF No. 1-2, at 74). Likewise, when Rep.

---

[7] At this time, Mr. Canfield had not identified the identity of his client on whose behalf he was inquiring.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 5 of 24

Pearce's campaign again asked the Secretary of State's Office if it could place federal campaign funds into his gubernatorial campaign without limitation, the Office reiterated its position that such a transfer would be subject to the contribution limits of the CRA. July 19, 2017, Letter from Blair to Canfield, attached to Complaint as Exhibit M (ECF No. 1-2, at 80-82.).

## II.      The Standard for Issuing a Preliminary Injunction.

A preliminary injunction "is an extraordinary remedy," thus, "the right to relief must be clear and unequivocal." *See Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  To be granted a preliminary injunction under Federal Rule of Civil Procedure 65, the moving party bears the burden of establishing four elements:

> (1) that [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*See id.* at 1258; *see also Logan v. Pub. Employees Ret. Ass'n*, 163 F. Supp. 3d 1007, 1026 (D.N.M. 2016) ("The movant bears the burden of demonstrating all four prongs' satisfaction.").

Three types of preliminary injunctions are particularly disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief it could recover at the full trial on the merits." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 977 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006). Requests for these "disfavored" injunctions "should be even more closely scrutinized" to "assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 975, 979–980.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 6 of 24

A preliminary injunction "disturbs the status quo" when the requested injunction would alter "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier*, 427 F.3d at 1260; *see also Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 633 F. Supp. 2d 1257, 1268 (D.N.M. 2008). "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier*, 427 F.3d at 1260. The Tenth Circuit has described the status quo as the "last peaceable uncontested status existing between the parties before the dispute developed." *Id.* Thus, the operative question is whether the injunction would alter "the position…occupied [by the parties] when th[e] dispute arose." *Planned Parenthood of Arkansas & E. Oklahoma v. Cline,* 910 F. Supp. 2d 1300, 1305 (W.D. Okla. 2012).

In contrast, a mandatory injunction does not per se upset the status quo, but rather "affirmatively requires the nonmovant to act in a particular way, and as a result ... places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier*, 427 F.3d at 1261 (internal alterations omitted).

A preliminary injunction that "affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits" is implicated where the injunction would "render a trial on the merits largely or completely meaningless." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001); *see also Logan*, 163 F. Supp. 3d at 1029 ("The meaning of this category is self-evident."). Thus, the effect of such an injunction, "once complied with, cannot be undone." *Id.*

All three types of disfavored injunctions are implicated by Plaintiffs' Motion. First, Plaintiffs seek to disrupt the status quo that existed when this dispute arose. Indeed, it is

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 7 of 24

uncontested that the Secretary's interpretation of the CRA, dating back to the prior Secretary of State, *see supra* Part I(c), has resulted in Rep. Pearce refraining from transferring en masse federal campaign funds to his gubernatorial campaign. Plaintiffs seek to alter this dynamic between the parties through the requested injunction authorizing such a transfer. The requested injunction is also mandatory, as it requires the Secretary to refrain from enforcing the CRA and restricts her ability to take action against Plaintiffs for violations of the CRA. *See* N.M. Stat. Ann. §§ 1-19-34.4, -34.6. Finally—and most crucially, the requested injunction would have the effect of deciding the merits of this dispute. Plaintiffs seek to transfer and spend, without limitation, the monies currently held in Rep. Pearce's federal campaign account. If the injunction is granted, Plaintiffs' federal campaign funds will already be transferred and spent, in contravention of the CRA's contribution limits, and any adjudication on the merits will be academic.

Therefore, Plaintiffs must meet the extraordinary burden of establishing by clear and unequivocal evidence, that they satisfy all four elements necessary for a preliminary injunction. Given the disfavored nature of the injunction they seek, any doubts should resolve in Defendants' favor.

### III.   <u>Plaintiffs Have Failed to Meet the Exceptional Burden Necessary to Obtain a Preliminary Injunction.</u>

Because Plaintiffs cannot make a "clear and unequivocal" showing of the four elements necessary for preliminary injunction, their motion should be denied. *See Wilderness Workshop v. BLM*, 531 F.3d 1220, 1224 (10th Cir. 2008). Given the extraordinary nature of the relief Plaintiffs seek, a failure to meet this high standard as to any element should be fatal to their Motion.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 8 of 24

*a.   Plaintiffs Are Unlikely to Prevail on the Merits.*

As the plain language of the standard for a preliminary injunction provides, Plaintiffs must establish a *substantial* likelihood of success. *See Logan v. Pub. Employees Ret. Ass'n*, 163 F. Supp. 3d 1007, 1032–33 (D.N.M. 2016). Plaintiffs' citation of a more lenient standard for likelihood of success, a "reasonable probability," Motion at 10–11, relies on outdated law. As the Supreme Court emphasized in *Winter v. Natural Resources Defense Council*, because movant for preliminary injunction must make a clear showing entitling her to relief, the elements needed for a preliminary injunction must be construed strictly. *See* 555 U.S. 7, 20–22 (2008). Relying on *Winter*, the Tenth Circuit has emphasized that any "test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible," including deviations from the requirement of a substantial likelihood of success. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).

Plaintiffs' rely almost exclusively on legal argument in their attempt to establish substantial likelihood on the merits. First, Plaintiffs argue that the enforcement of the CRA infringes on their First Amendment free speech rights. (Motion at 11–18.) Plaintiffs dispute the Secretary's interpretation of that statute as a limit on contributions, contending that her reading actually operates as a restriction on campaign expenditures, therefore triggering strict scrutiny under the First Amendment. (*Id.* at 12–14.) Plaintiffs' speculate that the Secretary is unable to satisfy the demands of strict scrutiny. (*Id.* at 15–18.) Plaintiffs make a second constitutional argument under the equal protection clause of the Fourteenth Amendment, contending that Representative Pearce has been singled out by the Secretary for disparate treatment. (*Id.* at 19–20.)

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 9 of 24

### 1.    Strict Scrutiny is Not Applicable to Plaintiffs' First Amendment Claims Because the CRA Provisions Regarding Transfers of Federal Campaign Funds Restrict Contributions, Not Expenditures.

As the Plaintiffs tacitly acknowledge, the question of whether the Secretary's position constitutes a restriction on "contributions" or "expenditures" determines the level of scrutiny applicable under the First Amendment. Restrictions on expenditures are subject to strict scrutiny, which requires the government to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." *Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013). Conversely, restrictions on contributions implicate "only a marginal restriction upon the contributor's ability to engage in free communication," and therefore need only "be closely drawn to serve a sufficiently important interest." *Id.*

In concluding that the Secretary's determination regarding Plaintiffs' transfer of funds restricts expenditures, Plaintiffs rely on a narrative unsupported by reference to authority.  The only evidence relied upon is a New Mexico state campaign disclosure form filed by former gubernatorial candidate Diane Denish, wherein Ms. Denish memorialized a transfer of funds from one state campaign fund to another. (*See* Motion, Ex. A (ECF No. 16-1).) However, the restriction on transfers of *federal* campaign contributions at issue here is plainly inapposite.

Under the Campaign Reporting Act, a "contribution" includes "any deposit of money or other thing of value … that is made or received for a political purpose." N.M. Stat. Ann. § 1-19-26(F). A "political purpose…means influencing or attempting to influence an election or pre-primary convention." *Id*. at § 1-19-26(M). While the CRA does define "expenditures" to generically include the "transfer … [of] any money," that language is limited to expenditures when seeking election to an office covered by the CRA. *Id.*; *see also* N.M. Stat. Ann. § 1-19-26(J); § 1-

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **10** of **24**

19-29.1. Perhaps more importantly, the broad language in the definition of "expenditures" does not negate the definition of "contributions" as encompassing deposits of money like that at issue here.

The fact that Plaintiffs challenge a contribution limit, rather than an expenditure limit, is demonstrated by the plain language and application of the challenged Secretary of State opinion. Plaintiffs do not contest any direct limitation on the state campaign, PFNM's, ability to spend money. Rather, Plaintiffs contend that the restriction on the amount of money that PFP can contribute to PFNM is unconstitutional. (*See* Complaint, ¶ 4) (describing imposition of state contribution limits); July 19, 2017, Letter from Blair to Canfield at 2, Complaint, Ex. M (ECF No. 1-2, at 81) ("[W]e do make the interpretation that the type of 'transfer' you are suggesting from Congressman Pearce's FECA account into an account governed by the CRA could be considered a 'deposit of money,' thus making it subject to contribution limits."). The CRA contains no limitation on the amount of expenditures that Plaintiffs can make.

By Plaintiffs' logic, any restriction on contributions is a limit on expenditures, because it has a roundabout effect on the amount of money a campaign has available to spend. (*See* Motion at 13.) But this argument proves too much; if a contribution limit is an expenditure limit because it ultimately affects expenditures, *all* contribution limits would be subject to strict scrutiny. Supreme Court precedent does not so hold. *See Republican Party*, 741 F.3d at 1092 (discussing distinction between contributions and expenditures). Also untenable is the fiction that campaign funds are personal funds, and therefore their use should be deemed an expenditure. (Motion at 13, 16.) This argument ignores the reality that money in campaign funds generally comes from donors, not a candidate's personal funds.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **11** of **24**

While there is a paucity of authority concerning whether a transfer between state and federal campaign coffers constitutes a "contribution" or an "expenditure," support exists for the proposition that transfers of campaign funds should be categorized as "contributions." For instance, in a challenge to Alabama's absolute prohibition on transfers of funds between political action committees, the Eleventh Circuit determined (and the parties agreed) that such transfers constitute "contributions" for purposes of First Amendment analysis. *See Alabama Democratic Conference v. Broussard*, 541 F. App'x 931, 932–33 (11th Cir. 2013). Similarly, in upholding Alaska's ban on "carry-forward" transfers of funds by candidates from one campaign cycle to the next, the Alaska Supreme Court ruled that the effect of that ban is to subvert "avoidance of valid contribution limits." *See State v. Alaska Civil Liberties Union,* 978 P.2d 597, 632 (Alaska 1999), *but see Serv. Employees Int'l Union, AFL-CIO, CLC v. Fair Political Practice Comm'n*, 955 F.2d 1312, 1322 (9th Cir. 1992) ("[California's] ban on intra-candidate transfers operates as an expenditure limitation because it limits the purposes for which money raised by a candidate may be spent.").

The reasoning that transfers of funds between campaigns should be considered a contribution, not an expenditure, is confirmed by the policies underscoring the heightened scrutiny applied to expenditures. As the Supreme Court has explained, *truly independent* expenditures implicate especially weighty First Amendment concerns and therefore should be subject to strict scrutiny. *See Republican Party,* 741 F.3d at 1093 ("The [Supreme] Court's rationale has been that independent expenditures by individuals do not pose the same risks as direct contributions.") *citing Buckley v. Valeo,* 424 U.S. 1, 47–48, 96 S. Ct. 612, 648 (1976). In this dispute, there is no allegation that the Secretary of State has prohibited Plaintiffs' independent expenditures or speech. Rather,

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 12 of 24

the CRA operates to limit donors, making contributions through a federal campaign, from making contributions to a state campaign. Therefore, the less rigorous standard applicable to restrictions on contributions governs any First Amendment analysis in this case, not strict scrutiny.

 2. Plaintiffs Have Not Established a Violation of Their First Amendment Rights.

Regardless of the standard imposed, the limitations imposed under the CRA withstand First Amendment scrutiny. Whether framed as either a restriction on campaign expenditures or contributions, the governmental interest in "preventing corruption or the appearance of corruption" is sufficient to justify the law. *See Republican Party*, 741 F.3d at 1094. In this case, the State will establish the largely unremarkable proposition that political corruption continues to be a serious problem in New Mexico, and that the CRA's campaign contribution limits are designed to deter such corruption and bolster public confidence against the appearance of corruption.

Plaintiffs assert that the government must present convincing evidence to sustain the CRA's restrictions on contributions from a federal campaign to a state campaign. (Motion at 14.) However, Plaintiffs fail to acknowledge their own duty to furnish evidence in support of their naked legal allegations that they will prevail on the merits. Indeed, Plaintiffs have done little more than recite the most basic information about their federal campaign fundraising. (*See, e.g.,* Complaint, ¶¶ 25–27.) For instance, while Plaintiffs acknowledge that the federal funds were raised over the course of at least five election cycles, *see* Motion at 7, including ten separate primary and general election periods, no effort is made to adduce evidence regarding the quantum of cumulative contributions over that period by individual donors. As a result, it is impossible to know whether PFP's account contains funds contributed by the same donors, multiple times, well

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **13** of **24**

in excess of the CRA's contribution limits for the a New Mexico statewide election. Instead, Plaintiffs make the unsupported and assertion that their "FECA-raised funds, with perhaps minor exceptions, already comply with the CRA…." (Motion at 18.)

Plaintiffs also give short shrift to the fundamental changes in New Mexico campaign finance law that have been enacted since Judge Parker's 1996 non-precedential order in *Richardson*.   As stated *supra* Part I(b), New Mexico radically altered its approach to regulating campaign finance in 1999, by adopting limits for the first time on campaign contributions.  This sea change was enacted on the heels of several high-profile political corruption scandals and reflects a dramatically different landscape since this Court acted in *Richardson*.   Despite these changes, the State has still been saddled by incidents of corruption. *See supra* Part I(b).  As a result, the State maintains an ongoing and compelling interest in strict application of New Mexico law to ensure that both actual corruption and the appearance of corruption are addressed.

Thus, the circumstances at bar are markedly different then when *Richardson* was decided, and Plaintiffs' near singular reliance on Judge Parker's 1996 order is insufficient to carry their heavy burden to establish that their success on the merits is likely.  Instead of addressing the real challenges implicated by political corruption in New Mexico, Plaintiffs instruct that "[c]orruption is a strong word." *See* Motion at 15.  However, as set forth in this Response, corruption is not a hypothetical construct in New Mexico, and mere conclusory denials don't warrant upsetting a duly-enacted provision intended to fix the problem.

Finally, Plaintiffs devote one paragraph to support their conclusion that Secretary's position is "not narrowly tailored," once again relying exclusively on the findings of the *Richardson* court.  However, as noted in the Parker order, the absolute bar on federal transfers

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **14** of **24**

before that Court would have been more likely to pass muster if an exception had been made for transfers of amounts in compliance with "state disclosure laws." *See* (ECF 1-2 at 65).  In the instant dispute, the Secretary has acted accordingly, permitting contributions from Representative Pearce's campaign federal coffers made in accordance with the CRA.  While Plaintiffs are quick to dismiss the significance of this distinction, *see* Motion at 18, the Secretary's action constitutes a narrow tailoring that serves both to protect the integrity of New Mexico elections while also permitting contributions by Plaintiffs.  To accept Plaintiffs' approach, especially when no evidence has been adduced on the subject, would allow the lump-sum transfer of a million dollars in funds where it would be impossible to ascertain the extent to which contributions accumulated over at least 10 elections would conform to the requirements of the CRA.

3.      Plaintiffs Have Not Established a Violation of Their Equal Protection Rights.

Plaintiffs also allege that their equal protection rights have been compromised because the Secretary's position "treats federal officials (and other former federal candidates with surplus FECA funds) differently from state officials." (*See* Motion at 19.)  Plaintiffs style their equal protection claim as a "class of one" challenge, as opposed to a challenge based upon a class of individuals alleging disparate treatment. Plaintiffs are mistaken on both the facts and law, and have failed to demonstrate even a modicum of likelihood of success on equal protection grounds.

As discussed above, the Secretary provided identical guidance to Representative Michelle Lujan Grisham, the other member of New Mexico's congressional delegation who is an announced candidate for governor in 2018. *See supra* Part I(c). Upon information and belief, Rep. Lujan Grisham has complied with the Secretary's interpretation, and has not initiated litigation to tap into

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **15** of **24**

her federal campaign reserves.

In order to proceed with an equal protection claim, it must first be established that the plaintiff is "similarly situated" to the allegedly advantaged universe of persons. This prerequisite applies to both "class of one" and protected classification claims.   "To bring a successful equal protection clause claim based on the class-of-one theory, the plaintiff must allege that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1217 (D.N.M. 2004), <u>aff'd,</u> 542 F.3d 802 (10th Cir. 2008).   This threshold inquiry is especially vital in the "class of one" context, where no broad-based injury to a protected class is implicated. *See Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1212–13 (10th Cir. 2006)  As Judge Posner has cautioned in assessing class of one claims, "[t]he concept of equal protection is trivialized when it is used to subject every decision made by state or local government to constitutional review by federal courts." *See Kelley*, 375 F.Supp.2d at 1217 *quoting Indiana State Teachers Assoc. v. Bd. of Sch. Comm'rs of the City of Indianapolis,* 101 F.3d 1179, 1181–82 (7th Cir.1996).   To avoid this pitfall, the claimant must establish that "the government is treating unequally persons who are prima facie identical in all relevant respects." *See id.*  Therefore, "in order to succeed on a class of one claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *See Highland Dev., Inc. v. Duchesne Cty.*, 505 F. Supp. 2d 1129, 1151 (D. Utah 2007).

Equal protection claims brought in the election context often fail to get beyond the "similarly situated" threshold.  In a particularly analogous situation, the District of Hawaii determined that federal officeholders and certain non-federal local officeholders are not

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **16** of **24**

"similarly situated" for equal protection purposes. *See Fasi v. Cayetano*, 752 F.Supp. 942, 954

(D. Haw. 1990).  The court rejected the argument that a state law requiring local – but not federal

– officeholders to resign from their posts prior to seeking state election violated equal protection.

*Id.* at 952-954.  In this Circuit, an examples of candidates found not similarly situated include

partisan versus independent candidates for office. *See Curry v. Buescher*, 394 F. App'x 438, 447

(10th Cir. 2010).

Under this standard, Representative Pearce is "identical in all relevant aspects" to one

other gubernatorial candidate: fellow member of Congress Michelle Lujan Grisham.  As *Fasi*

makes clear, a federal officeholder and non-federal officeholder differ in a relevant respect, thus

Representative Pearce's invocation of former Lieutenant Governor Diane Denish is inapposite.

As a result, an equal protection claim cannot proceed in this litigation, because the Secretary has

subjected the similarly-situated universe of Representatives Pearce and Lujan Grisham to

precisely the same treatment.[8]

       b.   *Plaintiffs Have Failed to Make a Clear Showing That Irreparable Harm Is Likely Absent an Injunction.*

To establish irreparable harm, Plaintiffs must present specific, concrete evidence that they

likely will be harmed absent a preliminary injunction. *See Winter*, 555 U.S. at 22 (plaintiffs seeking

a preliminary injunction must make a clear showing that irreparable harm is likely absent an

injunction). "Evidence that goes beyond the unverified allegations of the pleadings and motion

papers must be presented to support or oppose a motion for a preliminary injunction." Wright,

---

[8] Plaintiffs' equal protection claim also fails on the merits. *See supra* Part III(a)(2).

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 17 of 24

Miller, & Kane, 11A Fed. Prac. & Proc. Civ. § 2949 (3d ed. April 2017 Update), at n. 13. Thus, "[p]reliminary injunctions frequently are denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65." *Id.* at n. 17.

Plaintiffs' vague, conclusory assertions of harm from any delay in being able to deposit monies raised in federal races in their state campaign fund fail to comply with this requirement of documented, particularized injury. In particular, Plaintiffs do not establish that the particular funds in the PFP account are needed now, before the Court could practicably hold a trial on the merits. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("If a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief." (internal quotation marks and citations omitted)).

Rather, Plaintiffs proffer the vague assertion that the campaign needs money and that the value of money decreases over time. (*See* Motion, Ex. B. (Decl. of Andrea Todd-Goff in Support of Motion ("Todd-Goff Decl.") (ECF No. 16-2), ¶ 13.) Yet, money is fungible. Plaintiffs do not offer testimony about the amount of money the state campaign has on hand, the cost and timing of their planned expenses, or whether existing campaign funds are sufficient for these expenses. Plaintiffs similarly assert that they "will not have all resources necessary to reach the electorate," (Motion at 23), but do not substantiate this claim which is not self-evident, particularly given the ever-growing easy access to voters in the internet era. Even the most detail that Plaintiffs offer— that the campaign would have hired two staffers and bought ads had it been able to transfer the federal funds—is vague. (Todd-Goff Decl., ¶ 14.[9]) Plaintiffs offer no description of how much

---

[9] Ms. Todd-Goff also testifies that there is uncertainty about what things money from the federal, PFP account can be spent on. (Todd-Goff Decl., ¶ 16.) Any such uncertainty is immaterial to this

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **18** of **24**

money was needed for those projects, the timing of them, or whether they could have been accomplished with alternative sources of funds. Indeed, the fact that PFP's campaign funds have gone unspent in the past, across ten election cycles, raises skepticism that every dollar will be needed in this election, particularly before the general election starts and given that Rep. Pearce does not yet face a primary challenger.

Plaintiffs' contention that uncertainty about the availability of the PFP funds harms their campaign, (Motion at 21), does not counsel in favor of a preliminary injunction. Even if the court issues a preliminary injunction, the same uncertainty will exist about the ultimate outcome of this litigation at trial. That is, until and unless Plaintiffs prevail at trial, they will not know if they can spend the money in the PFP account, or whether Defendants might prevail and the state campaign would have to refund the money. In fact, the only way to avoid this uncertainty would be to refund PFP donors' money and ask the donors to make contributions to the state campaign in compliance with the CRA. This is the procedure set forth in federal law for transfers from a nonfederal to a federal campaign, 11 C.F.R. 110.3(d), and Plaintiffs do not address whether this "refund and re-contribute" procedure could avoid their purported harm.

Plaintiffs argue in the alternative that even if their campaign won't be irreparably harmed by waiting for a trial on the merits, any delay in exercising their First Amendment rights constitutes irreparable harm. (*See* Motion at 20.) Initially, this argument presupposes the merits of Plaintiffs' claims—that applying the CRA's contribution limits inhibits their speech as a campaign. And the

---

action. Not only does federal law, not state law, govern federal campaign committees, but Plaintiffs make no allegations in their Complaint about the effect of state laws on spending from the federal account.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **19** of **24**

mere assertion of a First Amendment interest is insufficient to establish irreparable harm for preliminary injunction purposes. *See Socialist Workers Party v. Att'y Gen. of U.S.*, 419 U.S. 1314, 1319 (1974) (cannot be "indiscriminate willingness to enjoin" government "whenever a countervailing First Amendment claim is raised"); *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits.").

Following this requirement of a particularized showing of harm to First Amendment interests, the District Court for the District of Columbia denied a motion for preliminary injunction challenging campaign finance regulations that affected the ability to raise and spend funds in *Emily's List v. FEC*. 362 F. Supp. 2d 43 (D.D.C. 2005). There, the court concluded that plaintiff's "relying on the persuasive power of invoking the First Amendment" wasn't enough and that plaintiff needed to make a specified showing of imminent, irreparable injury. *Id.* at 57–58. In particular, the court reasoned that contribution limits themselves do not restrict a campaign's speech and therefore implicate a First Amendment right to expenditures, they "'merely … require candidates and political committees to raise funds from a greater number of persons.'" *Id.* at 58 (quoting *Buckley*, 424 U.S. at 21–22). Likewise, because Plaintiffs have not clearly established that the enforcement of the CRA's contribution limits to the transfer of PFP's federal funds restricts the campaign's speech, Plaintiffs cannot show that they would be irreparably harmed absent an injunction.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **20** of **24**

      *c.*  *The Requested Preliminary Injunction Would Irreparably Harm the State's Anti-Corruption Efforts and Be Against the Public Interest.*

Perhaps most clearly, Plaintiffs' Motion for Preliminary Injunction should be denied because of the damage it would impose to the State's campaign finance laws and anti-corruption efforts, harm which cannot be unwound once a preliminary injunction is issued. The irrevocable nature of Plaintiffs' requested injunction also means that the public interest supports keeping New Mexico's campaign finance regime in place until a definitive conclusion can be reached as to its constitutionality. As a leading treatise has recognized, an important factor when balancing the hardship on the respective parties is "whether a preliminary injunction would give plaintiff all or most of the relief to which plaintiff would be entitled if successful at trial…." Wright, Miller, & Kane, 11A Fed. Prac. & Proc. Civ. § 2948.2 (3d ed. April 2017 Update), at n. 14.[10]

Here, if a preliminary injunction is issued, Plaintiffs will be permitted to use federal funds in state elections, contravening the contribution and disclosure laws in the CRA. *See supra* Part III(a)(2). These campaign finance laws further the public interest in preventing corruption and the appearance of corruption. Shining light on and limiting the money that a donor can give to political candidates not only deters pay-to-play schemes and other corruption but, by making the electoral process appear less corrupt, instills trust in the democratic process and promotes the responsiveness of elected officials. For these reasons, the enforcement of campaign finance laws furthering anti-corruption purposes is in the public interest. *See Homans v. City of Albuquerque,*

---

[10] If a preliminary injunction isn't irrevocable because the state campaign can refund the money if Defendants prevail at trial, this belies Plaintiffs' claim of irreparable harm. Plaintiffs either need the federal money now, and so require a preliminary injunction to avoid injury and will not have the money to reimburse later, or they can reimburse the money if they lose at trial, and do not need it immediately.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **21** of **24**

160 F. Supp. 2d 1266, 1274 (D.N.M. 2001) (denying motion for preliminary injunction challenging constitutionality of campaign expenditure limits, and finding public interest weighs against injunction).

Recognizing these interests, the court in *Emily's List* acknowledged the harm to the government and the public in dismantling campaign finance laws on preliminary injunction:

> "[I]ssuing a preliminary injunction at this stage would throw the present system of regulations into disarray. … The Supreme Court has made it clear that the government must take care to prevent 'both the actual corruption threatened by large financial contributions and the eroding of public confidence in the electoral process through the appearance of corruption.' Enjoining the disputed rules would undermine the FEC's efforts towards this end because in place of the regulations the public would find these portions of campaign finance law suddenly unregulated. … The Court finds that any of these scenarios is potentially harmful to the public interest such that it renders the issuance of preliminary injunctive relief inappropriate."

362 F. Supp. 2d at 58–59 (quoting *McConnell v. FEC*, 540 U.S. 93, 136 (2003) (other citations omitted). The Supreme Court has recognized that these anti-corruption and pro-democracy interests are of paramount, foundational public concern. *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 788–89 (1978) ("Preserving the integrity of the electoral process, preventing corruption, and sustaining the active, alert responsibility of the individual citizen in a democracy for the wise conduct of government are interests of the highest importance."); *Eu v. San Francisco County Democratic Cent. Committee*, 489 U.S. 214, 231 (1989) ("A state indisputably has a compelling interest in preserving the integrity of its election process."). Plaintiffs should not be permitted to unravel New Mexico's election law protections without a full and fair trial on the merits.

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 22 of 24

**IV.**   <u>**Conclusion.**</u>

Plaintiffs are requesting an extraordinary preliminary injunction, one that would resolve the case in their favor if granted. Because Plaintiffs have not met the exceedingly high burdens needed—including establishing all four elements for such a preliminary injunction, Plaintiffs' Motion should be denied.[11]

Respectfully Submitted,


By: _/s/ Nicholas M. Sydow_
Nicholas M. Sydow
Assistant Attorney General
111 Lomas Blvd. NW, Suite 300
Albuquerque, NM  87102
Tel.: (505) 717-3571
Fax: (505) 490-4881
nsydow@nmag.gov

and

Sean Cunniff
Assistant Attorney General
Post Office Drawer 1508
Santa Fe, NM 87504-1508
Tel: (505) 490-4829
Fax: (505) 490-4881
scunniff@nmag.gov
_Attorneys for Maggie Toulouse Oliver_

---

[11] Plaintiffs' preliminary injunction request also suffers from the infirmity that it is too vague and seeks relief on an issue that is not ripe. In particular, Plaintiffs' request that the court enjoin Defendants "from enforcing the restrictions in the Blair Letter" (Motion at 23), is too vague as to be enforceable. _See_ Fed. R. Civ. P. 65(d)(1) (an injunctive order must state its terms specifically and describe in reasonable detail the act or acts restrained or required). Also, Plaintiffs' request that the Court enjoin Defendants "from levying any restriction on the subsequent use of those funds" (Motion at 23) asks the Court to decide a dispute regarding potential restrictions on funds that have not yet been transferred. Any such potential restrictions are not at issue in this litigation and not ripe for resolution.

_People for Pearce v. Oliver,_ Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page 23 of 24

## CERTIFICATE OF SERVICE

I certify that on September 14, 2017, I served the foregoing on counsel of record for all

parties via the CM/ECF system.

_/s/ Sean Cunniff_
Sean Cunniff

*People for Pearce v. Oliver,* Case No. 2:17-cv-752 JCH/SMV
Secretary of State Maggie Toulouse Oliver's Response to Plaintiffs' Motion for Preliminary Injunction
Page **24** of **24**