## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PEOPLE FOR PEARCE and STEVE E. PEARCE, U.S. Representative for New Mexico's Second Congressional District | ) ) ) |
| _____ | ) |
| Plaintiff(s) | ) |
| v. | ) Case No. 2:17-cv-00752-JCH-SMV |
| | ) |
| MAGGIE T. OLIVER, in her individual capacity and her official capacity as Secretary of State of the State of New Mexico; HECTOR H. BALDERAS, JR., in his individual capacity and his official capacity as Attorney General of the State of New Mexico; and DIANNA LUCE, in her official capacity as Fifth Judicial District Attorney of New Mexico, | ) ) ) ) ) ) ) |
| _____ | ) |
| Defendant(s) | ) |

## ATTORNEY GENERAL HECTOR H. BALDERAS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM, LACK OF STANDING, AND IMMUNITY

COMES NOW, Attorney General Hector H. Balderas, and moves this Court to dismiss this action on multiple grounds. First, the gravamen of Plaintiffs' Complaint is a decades-old District Court Order on a state statute, which is not at issue here. Plaintiffs' Complaint fails to satisfy basic standards of notice pleading and should be dismissed pursuant to Rule 12(B)(6). Plaintiffs lack standing, their speculative claims are not ripe for adjudication, they fail to allege sufficient facts to support any claim for relief, and their individual-capacity claims are barred by prosecutorial and qualified immunity. Defendant Attorney General Balderas respectfully requests that this Court enter an order dismissing him both individually and in his official capacity in this matter.

## I.     INTRODUCTION

New Mexico Attorney General Hector H. Balderas has pursued an aggressive agenda of protecting New Mexicans from corruption, fraud, and campaign finance abuse. Plaintiffs--Steve Pearce and his fundraising entity--however, do not allege that their political operation is the target of any enforcement efforts. In fact, their Complaint makes plain that they have not yet engaged in any transfers of funds that would potentially trigger an investigation into the propriety of such a transaction. The Attorney General does not undertake investigations or pursue legal action where no improper act has occurred. Therefore, because Plaintiffs' claims against the Attorney General are speculative rather than imminent, as required to establish standing to obtain injunctive relief, this suit needlessly consumes resources and risks improperly intruding on the Office of the Attorney General's proper role in investigating campaign finance law violations.

Plaintiffs seek to transfer more than one million dollars raised through unknown donors for the purpose of a federal campaign to his gubernatorial "war chest." Complaint  ¶ 4 (Doc. No. 1). Plaintiffs have failed to articulate any factual basis or legally cognizable theory for filing suit against the Attorney General--in his individual or official capacity. Essentially, Plaintiffs have inappropriately filed a lawsuit filled with speculation and devoid of facts to prevent the Attorney General from taking some unspecified action based on a state statute that the Attorney General has not used to initiate any action against them.  Plaintiffs purport to seek injunctive relief against the Attorney General precluding enforcement of a position allegedly taken by New Mexico Secretary Maggie Toulouse Oliver. Complaint at ¶¶ 64-80 (Doc. No. 1). However, Plaintiffs fail to identify a single action taken by the Attorney General which would grant them standing to request injunctive relief from him.

Instead, Plaintiffs take a flawed, speculative approach. Relying on an unpublished memorandum order addressing a statute different than the one Plaintiffs challenge, Plaintiffs make clear that they disagree with the Secretary's letter. What they fail to clarify in their 27-page Complaint is what action Attorney General Balderas has taken as a result of the Secretary's letter. Fear  that the Attorney General may someday investigate or prosecute them if they transfer their campaign funds is not enough to establish standing and thus, Plaintiffs' claims against the Attorney General should be dismissed.

Because Plaintiffs lack standing to bring this action, have failed to articulate any factual basis for including the Attorney General, and thus need for an injunction, the Court should dismiss the Complaint pursuant to Rule 12(B)(6).

## II.     PLAINTIFFS LACK STANDING AND THEIR SPECULATIVE CLAIMS ARE NOT RIPE FOR JUDICIAL REVIEW.

Plaintiffs lack standing to petition this Court for prospective injunctive and declaratory relief against the Attorney General. If a claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," then the claim is not ripe for adjudication. *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co*., 473 U.S. 568, 580–581, 105 S.Ct. 332587 L.Ed.2d 409(1985)) (internal quotation marks omitted). Claims that are not ripe for adjudication should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). Ripeness pertains to the timing of a case and is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id*.

Because Plaintiffs' claims against the Attorney General are based on future events that may never occur at all, they are not ripe for adjudication. *Texas v. United States*, 523 U.S. at 300

(claims based on contingent future events are not ripe). Whether the Attorney General may prosecute Plaintiffs for a violation of the New Mexico Campaign Reporting Act is contingent on a number of factors, none of which Plaintiffs allege have occurred. Plaintiffs do not allege that the Attorney General has initiated an investigation of their campaign or fundraising practices. They do not even allege that the Attorney General has ever prosecuted other entities for the conduct they seek to engage in. They do not allege that anyone has referred the issue to the Attorney General for review. Essentially, they ask this Court to review an action that the Attorney General has not taken and may never take. *Cf. Texas v. United States*, 523 U.S. at 300. At least with respect to the Attorney General, Plaintiffs have alleged only a remote, abstract controversy--one not ripe for review.

**A.      Plaintiffs lack standing to seek relief against the Attorney General.**

A federal court may hear cases only if the plaintiff has standing to sue. *See Payne v. Wilder*, No.CIV 16–0312, 2017 WL 2257390, at *2 (D.N.M. Jan. 3, 2017). "Standing is determined as of the time the action is brought." *Smith v. United States Court of Appeals, for the Tenth Circuit*, 484 F.3d 1281, 1285 (10th Cir. 2007) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005)).

Standing has two components. First, standing has a constitutional component arising from Article III's requirement that federal courts hear only genuine cases or controversies. Second, standing has a prudential component. *See Habecker v. Town of Estes Park, Colo*., 518 F.3d 1217, 1224 n.7 (10th Cir. 2008) (prudential standing concerns may prevent judicial resolution of a case even where constitutional standing exists). The burden of establishing standing rests on the plaintiff. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)

The plaintiff must "allege ... facts essential to show jurisdiction. If they fail to make the necessary allegations, they have no standing." *FW/PBS v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal citations and quotations omitted). Moreover, where the defendant challenges standing, a court must presume lack of jurisdiction "unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)) (internal quotation marks omitted). "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (Henry, J.) (quoting *FW/PBS v. City of Dallas*, 493 U.S. at 231)

"Article III of the Constitution limits the jurisdiction of federal courts to Cases and Controversies." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1171 (10th Cir. 2007) (en banc) (abrogated on other grounds by *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 912-13 (10th Cir. 2017); *see* U.S. Const. art. III, § 2. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (brackets omitted).

The mere presence on the books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct that the statute prohibits. *See Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006). "This does not necessarily mean that a statute

must be enforced against the plaintiff before he can sue." *Id.* at 732. Where a plaintiff can show a "credible threat of prosecution," they can sue for prospective relief against enforcement. *Id.* Thus, to satisfy Article III, the "plaintiff's expressive activities must be inhibited by an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement." *Id.* (internal quotations omitted).

To satisfy the "injury-in-fact" element of standing, a plaintiff must demonstrate that "there exists a credible threat of prosecution thereunder." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). To be credible, a threat must be "well-founded and not imaginary or wholly speculative." *Id.* (internal quotation marks omitted). "When a plaintiff challenges the validity of a criminal statute under which he has not been prosecuted, he must show a 'real and immediate threat' of his future prosecution under that statute to satisfy the injury in fact requirement." *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004).

Plaintiffs do not clear this bar. They do not allege a single fact that would support an inference that the Attorney General is threatening imminent prosecution. The allegation that  Plaintiffs have had some communication with the Secretary of State is not enough. The chain of causation must flow to every defendant from which Plaintiffs seek relief. Therefore, to have standing to enjoin the Attorney General, Plaintiffs must allege an injury "fairly traceable" to an action by the Attorney General. *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007). They have not done this. The complaint lacks any alleged facts about what the Attorney General has actually done to instill a fear of prosecution in Plaintiffs. The fact that the Attorney General has the general authority to enforce the Campaign Reporting Act is not enough to establish a credible threat of prosecution.

6

Plaintiffs alleged no facts that would establish that there is any real danger of prosecution. The Office of the Attorney General routinely receives numerous referrals and complaints relating to a variety of legal issues. When a referral is received, the Office typically conducts an initial review to ascertain any facts, jurisdictional issues, and conflicts of interest, before deciding whether and how to proceed further.

The complaint does not allege that the Office of the Attorney General has made any determination as to whether a further investigation would be appropriate, much less any decisions regarding pursuing criminal charges against a particular person or entity. Like any initial review of any complaint or referral the Office receives, any referral from the Secretary has the *potential* to proceed to an investigation; however, the risk of prosecution arising from any investigation is entirely speculative at this point.

For example, under New Mexico law, prior to initiating a case, a prosecuting authority must ensure that there is no conflict of interest that could create the appearance of impropriety. *See, e.g., State v. Gonzales*, 2005-NMSC-025, ¶ 34, 138 N.M. 271, 119 P.3d 151. The complaint does not allege that the Attorney General's consideration of the matter has even passed this initial threshold.

An investigation is considered to be remote and speculative through the time of indictment. In *United States v. Hubbard*, No. AW–13–344, 2013 WL 1773575, *2 (D.Md., April 24, 2013), the Criminal Investigation Division of the Internal Revenue Service had seized documents by search warrant and the court still concluded that the investigation was in an early stage. The court explained: "although a criminal investigation has commenced, Defendants have not demonstrated that indictment is anything more than a remote or speculative possibility." *Id*.

Assuming *arguendo* that the Office of the Attorney General did conduct an investigation, any determination of the viability of an action against Plaintiffs is remote. An investigation requires interviews, gathering documents, analysis of the evidence, and finally, a legal determination of the viability of a potential case. Plaintiffs have not alleged any facts to establish that the Attorney General has undertaken the first step in this long process. They do not even allege that the Attorney General has received a referral that could trigger initial screening for investigation that might someday, after evidence collection and analysis, result in a prosecution. Nor have they alleged that the Attorney General has prosecuted any other candidate or campaign for anything similar to the federal-to-state transfer they propose. *Cf. Bronson*, 500 F.3d at 1108-09 (prior prosecutions factor in credible-threat analysis). Plaintiffs expound at length on the benefits that the million-dollar "war chest" would bring to their efforts, but they cannot "satisfy the credible-threat-of-prosecution test by relying on evidence of their compliance with the challenged statute." *Colorado Outfitters Ass'n v. Hickenlooper,* 823 F.3d 437, 548 (10th Cir. 2016). The mere existence of a statute does not create a credible threat of prosecution. *Brown*, 822 F.3d at 1165.

Any fear of imminent prosecution is therefore imaginary, and Plaintiffs' Complaint and request for a preliminary injunction are insufficient to establish a credible threat. *Bronson*, 500 F.3d at 1109. Therefore, regardless of the actions of other parties, Plaintiffs have not established standing to include the Attorney General as a defendant in this matter.

Even assuming Plaintiffs have a valid claim for relief against some party, they can obtain that relief without enjoining the Attorney General. The Tenth Circuit has held that "generally one cannot bring a declaratory judgment action just to resolve one isolated issue in a possible future controversy." *Payne v. Wilder*, WL 2257390 at *9 (quoting *Columbian Fin. Corp. v. BancInsure,*

*Inc.*, 650 F.3d 1372, 1380 (10th Cir. 2011)). If the declaratory relief that the complaint seeks is granted and the statute is declared unconstitutional, then neither the Secretary nor the Attorney General could take enforcement action against Plaintiffs.  In that event, no further relief against the Attorney General would be necessary. Should the Secretary prevail on the merits and the statute be upheld, then the Attorney General would be free to consider the matter for investigation and there is no reason to enjoin him. Here, Plaintiffs' grievances are too remote to justify an injunction against the Attorney General.

**B.    If the Attorney General did initiate an investigation or action, Plaintiffs would have an adequate remedy under New Mexico law and this Court should abstain from disrupting the state enforcement process.**

The Supreme Court has held that federal injunctions against a state criminal law enforcement processes could be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. 746,  27 L.Ed.2d 669 (1971). The Supreme Court noted that federal courts should not act to restrain a criminal prosecution, or interfere with state appellate proceedings. *Younger,* 401 U.S. at 43; *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200,43 L.Ed.2d 482 (1975). Courts have held that a federal court must abstain in deference to a state criminal investigation in the context of a campaign finance law investigation. *See Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008).

Under the abstention doctrine, "federal courts should not 'interfere with state court proceedings' by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings"—when the state forum provides an adequate avenue for relief. *Payne v. Wilder*, WL 2257390 at *13 (quoting *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001)). This

refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (quoting *Seneca–Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989)).

The court in *Fieger* held that issues of "financing of campaign advertisements, criminal activity related to campaign financing, judicial review of criminal proceedings, (i.e. issuance of search warrants and investigative subpoenas, the regulation of the campaign financing, and the relationship between the Secretary of State and the Attorney General regarding enforcement of possible violations of the Act) are all important state interests under *Younger. See Fieger v. Cox*, 524 F.3d at 775.

As recognized by the *Fieger* Court, Plaintiffs who are served with search warrants or subpoenas could file motions to quash the search warrants, raise constitutional issues, and procedural irregularities through the state Courts, and challenged evidence seized after the fact. Moreover, they could bring their federal claims in state court. *See Felder v. Casey,* 487 U.S. 131, 153, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (requiring state courts to hear federal constitutional claims).

Plaintiffs appear to allege in their Complaint that there is a current imminent threat of prosecution or that there is at least an investigation involving the Attorney General. *See* Complaint ¶ 24 (Doc. No. 1) (alleging that an injunction is necessary to prevent civil or criminal enforcement). Taking those allegations as true, the appropriate disposition of this case would be dismissal based on *Younger* abstention. *See Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (holding that when the *Younger* abstention elements are met, a district court should dismiss the claims before it, unless a petitioner has brought claims which

"cannot be redressed in the state proceeding," in which case the district court should stay the federal proceedings pending the conclusion of the state litigation.)

Whether potential prosecution is speculative or imminent, under the facts alleged by Plaintiffs, this case should be dismissed.

## III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' Complaint is devoid of any specific alleged actions taken by the Attorney General and thus, Plaintiffs fail to state a claim against the Attorney General.

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (Brorby, J.). The complaint's sufficiency is a question of law. *See Payne v. Wilder*, WL 2257390 at *2.

"To survive a motion to dismiss, a plaintiff must plead facts sufficient to state a claim to relief that is plausible on its face." *Albers v. Bd. of County Commissioners*, 771 F.3d 697, 700 (10th Cir. 2014) (internal quotation marks and citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

If a complaint fails to allege sufficient facts to state a plausible claim for relief, the complaint must be dismissed. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*See Payne v. Wilder*, 2017 WL 2257390 at *2 (D.N.M. Jan. 3, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570 (citations omitted)).

Plaintiffs fail to set forth any cognizable basis for including the Attorney General—in both his individual and official capacity—as a Defendant in this matter. Indeed, the factual basis for including the Attorney General in the suit cannot be found in the Complaint. The sum total of  Plaintiffs' allegations against the Attorney General amount to a bare recitation of his statutory authority and unsubstantiated speculation that the Secretary of State formed her opinion "in consultation with" the Attorney General. *See* Complaint at ¶¶ 13, 68 (Doc. No. 1).

Plaintiffs' allegations therefore fail to meet the facial-plausibility requirement under Rule 12(b)(6). The statutory language permitting the Secretary to consult with the Attorney General, who serves as counsel for many state officials and agencies, does not lead to an inference that the

Attorney General drives the Secretary's conclusions on any matter, agrees with the Secretary's position in this case, or is required to initiate any proceedings based on the Secretary's position.

In essence, Plaintiffs have alleged only that the Attorney General has the legal authority to someday take a position on NMSA 1978, § 1-19-29.1(C) (2010). However, Plaintiffs have failed to plead sufficient facts to establish that he has done so. They do not explain how this entitles them to any relief. *Christy Sports, LLC v. Deer Valley Resort Co*., *LTD*, 555 F.3d 1188, 1191 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law.").

Thus, Plaintiffs' allegations against the Attorney General do not state a claim that rises above the "speculative level." *Id*. Plaintiffs' Complaint therefore fails a Rule 12(B)(6) analysis and any allegations against the Attorney General should be dismissed.

## IV.   PLAINTIFFS' CLAIMS AGAINST THE ATTORNEY GENERAL IN HIS INDIVIDUAL CAPACITY ARE BARRED BY PROSECUTORIAL AND QUALIFIED IMMUNITY

Plaintiffs present two counts in their Complaint. Complaint ¶¶ 64-80 (Doc. No. 1). Both counts asserts claims against the Defendants in their official capacities. Plaintiffs do not identify any count in which they seek relief from the Attorney General in his individual capacity. Yet, according to the case caption, Plaintiffs brought suit against the Attorney General in both his official and individual capacities. To the extent that Plaintiffs seek damages or other relief from the Attorney General in his individual capacity, those claims are barred by prosecutorial and qualified immunity. *See, e.g., Lewis v. Clarke*, 137 S.Ct. 1285, 1291,137 S.Ct. 1285, 197 L.Ed.2d 631  (2017) ("An officer in an individual-capacity action . . . may be able to assert personal immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances.").

A.   **Because the decision to initiate civil or criminal enforcement proceedings is a quintessential prosecutorial function, prosecutorial immunity bars Plaintiffs' claims against the Attorney General in his individual capacity.**

As a form of absolute immunity, prosecutorial immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13, 427-28, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Prosecutorial immunity completely bars any individual-capacity suit for damages against a prosecutor who acted within the scope of his or her duties. *E.g., Van de Kamp v. Goldstein*, 555 U.S. 335, 342-44, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009); *see also Jennings v. Grayson*, No. CIV 17-0359 JB/SCY, slip op. at 4-5, 2017 WL 3835808 (D.N.M Aug. 31, 2017) ("In New Mexico, prosecutors who are sued for money damages enjoy the same immunity in state or federal court."). This immunity is not limited to criminal process but also includes "civil proceedings where a government attorney is operating in an enforcement role in 'initiating . . . judicial proceedings." *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (*quoting Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000)); *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n. 4 (10th Cir. 1991).

Plaintiffs have not alleged that the Attorney General has taken any action, much less that he has acted outside the scope of his duties as a prosecutor. At best, they make general, unsupported assertions that they fear that, if they proceed with their plan, the Attorney General may prosecute them.

The decision to bring charges, however, is "a quintessential prosecutorial function protected by absolute immunity." *Stein v. Disciplinary Bd. of Supreme Court of NM*, 520 F.3d 1183, 1194 (10th Cir. 2008). Therefore, even if Plaintiffs could show that the Attorney General was preparing to prosecute them, prosecutorial immunity would bar any claim for damages against him in his individual capacity.

14

**B.      Because Plaintiffs have not alleged that the Attorney General violated a well-established constitutional right, qualified immunity bars the claims against the Attorney General in his individual capacity.**

Even if prosecutorial immunity does not bar Plaintiffs' individual-capacity claims against the Attorney General, qualified immunity does. "[T]he Supreme Court has recognized that public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). If it applies, qualified immunity is not merely a defense to liability, it provides a complete immunity from suit. *Id.*  In cases such as this one, the Attorney General "enjoy[s] a presumption of immunity when the defense of qualified immunity is raised." *Id*.

To overcome this presumption of immunity, Plaintiffs must make two showings: "first, that a public official violated the plaintiff's constitutional" rights, and "second, that these rights were clearly established at the time of the alleged violation." *Id*. Plaintiffs bear the burden of making these showings. *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015).

Plaintiffs cannot make this showing because they have not alleged that the Attorney General has violated their clearly-established constitutional rights. Indeed, Plaintiffs have not alleged that the Attorney General has done anything to them at all. They do not allege that he is investigating them. They do not allege that he has threatened prosecution. They do not allege that he has taken any action at all with respect to their proposed course of conduct. At most, they note that he has abstract authority to enforce the statute they challenge. But they present no support for the notion that unused authority to enforce an allegedly unconstitutional statute is tantamount to a constitutional violation. In essence, they are alleging that the Attorney General has violated their rights merely by holding the office.

15

There are circumstances where an official could violate a person's rights through inaction, but this case is not one of those circumstances. To proceed against the Attorney General in his individual capacity, Plaintiffs have to show that a "reasonable official would understand that what he is doing violates" the constitutional right at issue. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).

No reasonable official would believe that merely holding the office violates the constitution. But that is essentially what Plaintiffs have alleged—that merely by holding the office, the Attorney General has violated their rights. This is insufficient to overcome the presumption of qualified immunity. *Pahls*, 718 F.3d at 1227.

Finally, even if Plaintiffs had properly pleaded some affirmative act by the Attorney General, they have not established that their constitutional theory is correct, much less "clearly established." *Id*. Plaintiffs do not identify any case law striking down the application of a contribution limit to a transfer of funds from a federal campaign account to a state campaign account. Their theory relies on a questionable re-characterization of the contribution limit as an expenditure limit. And in asserting their theory, they rely primarily on an unpublished memorandum opinion striking down a different statute.

Because Plaintiffs fail to allege any facts indicating that the Attorney General has violated a clearly-established constitutional right, qualified immunity bars their individual-capacity claims against him. *Pahls*, 718 F.3d at 1227.

**CONCLUSION**

Plaintiffs' suit against the Attorney General suffers from a basic and fatal deficiency. The complaint fails to allege what the Attorney General did and why Plaintiffs are entitled to relief as a result. Whether analyzed under the doctrines of ripeness, standing, failure to state a claim, or

immunity, the complaint comes up short. The suit is premature. Plaintiffs have not alleged a legal

basis to sue the Attorney General. The claims against him should therefore be dismissed.


Respectfully submitted,


By:  /s/ Rebecca C.  Branch
Rebecca C. Branch
Assistant Attorney General
P.O. Box 1508
Santa Fe, New Mexico 87504-1508
(505) 490-4825
(505) 490-4881 (fax)
rbranch@nmag.gov


I hereby certify that a true and correct
copy of the above pleading was served
on all attorneys of record through
the U.S. District Court's electronic
filing system on the 14th day of September,
2017.

  /s/ Rebecca C. Branch
Rebecca C. Branch