# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PEOPLE FOR PEARCE and STEVE E. PEARCE, U.S. Representative for New Mexico's Second Congressional District,<br><br>        Plaintiffs,<br><br>      vs.<br><br>MAGGIE T. OLIVER, in her individual capacity and her official capacity as Secretary of State of the State of New Mexico; HECTOR H. BALDERAS, JR., in his individual capacity and his official capacity as Attorney General of the State of New Mexico; and DIANNA LUCE, in her official capacity as Fifth Judicial District Attorney of New Mexico,<br><br>        Defendants. | Case No. 2:17-cv-00752-JCH-SMV |

## PLAINTIFFS' RESPONSE TO DEFENDANT HECTOR H. BALDERAS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, LACK OF STANDING, AND IMMUNITY

        The Motion[1] filed by Defendant Hector H. Balderas, Jr. ("the Attorney General") seeking dismissal of the claims against him[2] completely lacks merit. Its justiciability arguments, when read together, lead to the absurd result that a state law-enforcement official can never be enjoined by a federal court. The Attorney General's Motion contends that he cannot be sued for enforcing a First Amendment-violating criminal law until there is an indictment, because until then the

---

[1] Attorney General Hector H. Balderas' Motion to Dismiss Complaint for Failure to State a Claim, Lack of Standing, and Immunity (Doc. No. 26) (filed Sept. 19, 2017) ("Motion" or "Mot.").

[2] Although the Motion initially states that it "moves this Court to dismiss this action" – implying that it seeks dismissal of the claims against all three Defendants – it repeatedly makes clear throughout that it seeks dismissal only of the claims against the Attorney General. Mot. (Doc. No. 26) at 1. The other Defendants did not join the Motion, nor is there even any indication that they consent to it.

case is unripe; he also believes that he cannot be sued post-indictment, because of the *Younger*[3] abstention doctrine. *See* Mot. (Doc. No. 26) at 7 ("An investigation is considered to be [too] remote and speculative [to support a ripe suit to enjoin enforcement of the law in question] through the time of indictment."); *id.* at 10 ("Plaintiffs appear to allege in their Complaint that there is a current imminent threat of prosecution or that there is at least an investigation involving the Attorney General. Taking those allegations as true, the appropriate disposition of this case would be dismissal based on *Younger* abstention."). The Motion's Rule 12(b)(6) arguments just rehash the justiciability ones, *i.e.*, that the Attorney General has not personally done enough to be named as a Defendant. And the Motion's immunity arguments, while at least containing a more-or-less accurate description of the law, are directed at claims that do not exist: there are currently no individual-capacity claims against any of the Defendants. Thus, and for the reasons explained in detail below, the Attorney General's Motion to Dismiss should be denied.

## ARGUMENT

Where, as here, a defendant mounts a facial attack against a plaintiff's complaint on justiciability grounds, the court "must accept as true all material allegations of the complaint," although it may additionally consider affidavits and other evidence, and it "must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002). The facts as stated in the Plaintiffs' Complaint, as well as the law of this Circuit, demonstrate that the Attorney General's justiciability arguments are meritless and provide no proper basis to dismiss him from this lawsuit.

---

[3] *Younger v. Harris*, 401 U.S. 37 (1971).

**I.    THE CLAIMS AGAINST THE ATTORNEY GENERAL ARE JUSTICIABLE, AND THE TENTH CIRCUIT HAS ADDRESSED NEARLY THIS EXACT ISSUE, IN NEARLY THIS EXACT CASE, BEFORE.**

In his efforts to keep the Court from deciding this case's merits, the Attorney General argues standing, ripeness, and the *Younger* abstention doctrine. *See* Mot. (Doc. No. 26) at 3-11. Yet, the Attorney General makes no effort to explain when, under his conception of the law, a suit for injunctive relief could *ever* be brought against him, in this or any other case. In fact, the logical result of coupling the Attorney General's ripeness argument that "[a]n investigation is considered to be [too] remote and speculative [to support a ripeness determination] through the time of indictment," Mot. (Doc. No. 26) at 7, with the *Younger* abstention doctrine – which the Attorney General incorrectly believes applies to this case, but which actually does bar suit once there is "an *ongoing* state judicial proceeding" – is that a plaintiff could never bring suit to enjoin a state law-enforcement official from prosecuting the plaintiff for violating an unconstitutional law, *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (emphasis added).

The Attorney General makes no attempt to square his position with the myriad cases – including those brought against these very Defendants – where a plaintiff has been found to have standing to sue on the basis of a not-yet-enforced law. *See*, *e.g.*, *N.M. Youth Organized v. Herrera*, 611 F.3d 669, 673-74 & n.1 (10th Cir. 2010) (concluding that an entity that the Secretary of State sought to regulate had standing to challenge New Mexico's campaign-finance law, despite the fact that the statute "set[] forth an administrative procedure under which a party may ask the Secretary of State to change her decision," as well as binding arbitration procedures if that process fails); *ACLU v. Johnson*, 194 F.3d 1149, 1154-55 (10th Cir. 1999) (finding standing and ultimately enjoining the Attorney General and all of the state's district attorneys from enforcing an unconstitutional law).

The Attorney General's arguments misapprehend the fundamentals of the justiciability and abstention doctrines they rely upon, and those fundamentals will be described and applied in Part I.B, below. But there is no need to reinvent the wheel here, as this issue has already been decided in factually indistinguishable circumstances in a Tenth Circuit opinion from a case whose district-level orders have already been established to be central to this case: *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995) ("*Richardson*").

### A.   The Attorney General Cannot – and Makes No Attempt to – Distinguish the *Richardson* Case.

A single, indistinguishable controlling precedent compels the result here. As the Court is likely aware, the *Richardson* case arose when then-congressman Bill Richardson, while contemplating a run for governor, sued the Secretary of State, the Attorney General, and his local district attorney – the very same defendants that the Plaintiffs named in this action – to enjoin them from enforcing what is now § 1-19-29.1(C) of the CRA[4] against his transfer of roughly a half-million dollars in FECA[5] funds to a CRA account. *See* NMSA 1978, § 1-19-29.1(C) ("No contributions solicited for or received in a federal election campaign may be used in a state election campaign."). Judge Parker initially dismissed the case on justiciability grounds, ruling that, because Richardson had not yet concretely declared his intention to run for governor, because the next gubernatorial election was four years away, and because there was significant uncertainty about whether the statute would be enforced to prevent activities (like polling) that Richardson was likely to conduct in the immediate future,[6] the case was insufficiently ripe for

---

[4] New Mexico Campaign Reporting Act, NMSA 1978, §§ 1-19-25 to -36 ("CRA").

[5] Federal Election Campaign Act of 1971, 52 U.S.C. §§ 30101-30146 ("FECA").

[6] A particular strength of the *Richardson* defendants' argument was the fact that § 1-19-29.1(C) only prohibited *expenditures* of FECA money in a state race, and candidates were not allowed to make such expenditures prior to announcing their intention to run for state office. *See Richardson*, 64 F.3d at 1500.

adjudication.  *See* Memo. Op. & Order at 9-10 & n.6, No. 93-CV-1135 JAP/WWD (D.N.M. Aug. 4, 1994) ("[P]laintiffs' interest in state office . . . has been demonstrated only through historical assertions by Congressman Richardson that he may 'someday' run for governor. . . . The next gubernatorial election . . . [is] more than four years from now. . . .  Given the length of time before the next gubernatorial election, there is the possibility that the legislature will amend the statute in a way that would render moot the substantive issues in this case.").

Richardson appealed the dismissal, and the Tenth Circuit ultimately reversed, holding that (1) it "disagree[d] with the proposition that no direct or immediate dilemma is faced by the Congressman until and unless he announces his candidacy for state office," *Richardson*, 64 F.3d at 1501; (2) "[w]hen contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights,'" *id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); and (3) "'[t]he principle that one does not have to await the consummation of threatened injury to obtain preventive relief is particularly true in the election context, where [] the Supreme Court often ha[s] allowed preenforcement challenges to restrictions on speech,'" *id.* (citation omitted).  Thus, the Tenth Circuit held that the controversy was ripe for adjudication despite Richardson's non-candidacy, despite the temporal remoteness of the election, and despite the fact that the defendants had given no clear indication that they intended to enforce the statute against particular actions that Richardson intended to take in the immediate future – all of which are facts that militate against a finding of ripeness, and none of which are present in this case.

Despite the striking similarity of *Richardson*'s facts to those of this case and the fact that the Tenth Circuit issued a published opinion setting forth controlling authority on justiciability in

5

constitutional challenges to campaign finance laws, the Attorney General, in his 17-page Motion devoted primarily to justiciability, barely mentions *Richardson*. *See* Mot. (Doc. No. 26) at 3 (citing *Richardson* a single time, and only for the generic proposition that "[c]laims that are not ripe for adjudication should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction"). The only meaningful factual differences between this case and *Richardson*, vis-à-vis justiciability, all render this case more justiciable, not less:

- The major issue in *Richardson* was the fact that Richardson had not firmly declared his intent to run for governor either in public or in litigation (and, in fact, he ended up not running). Rep. Pearce has formally declared his candidacy and is actively running for governor. *See*, *e.g.*, *Republican Rep. Pearce Running for Governor in New Mexico*, U.S. News & World Report (July 10, 2017), *available at* https://www.usnews.com/news/best-states/new-mexico/articles/2017-07-10/gop-rep-steve-pearce-runs-for-governor-will-leave-congress (last visited Oct. 3, 2017).

- The complaint in *Richardson* was filed over five years before the relevant election. *See Smith v. U.S. Court of Appeals for the Tenth Circuit*, 484 F.3d 1281, 1285 (10th Cir. 2007) ("Standing is determined as of the time the action is brought."); Complaint, No. 93-CV-1135 JAP/RLP (filed Sept. 27, 1993); Memo. Op. & Order at 9, No. 93-CV-1135 JAP/WWD (D.N.M. Aug. 4, 1994) ("The next gubernatorial election . . . [is] more than four years from now. . . ."). The Complaint in this case was filed less than 16 months before the November 6, 2018 general election, and after Rep. Pearce had both formally declared his candidacy and repeatedly indicated his desire to transfer his FECA money to a CRA account. *See* Complaint ¶¶ 58-63, at 21-23 (Doc. No. 1) (filed July 20, 2017).

6

- There were questions in *Richardson* about whether anything that Richardson could do pre-declaration-of-candidacy would run afoul of § 1-19-29.1(C), which prohibits only expenditures of FECA funds. "An added difficulty is the problem encountered in trying to figure out what the New Mexico statute prohibits. . . . [D]oes the statute simply govern the expenditures of federally raised campaign funds of a candidate when that same candidate runs for state elective office, as New Mexico urges, or does the statute proscribe spending any federally raised funds for any state election?" *Richardson*, 64 F.3d at 1502. Here, the Secretary of State has stated in writing that a full transfer of funds from Rep. Pearce's FECA account to a CRA account would violate the CRA, *see* Letter from John Blair to Bill Canfield (dated July 19, 2017) (Doc. No. 1-2, Ex. M).

- In *Richardson*, any questions about whether Richardson's activities might lead to prosecution by the Attorney General would depend upon the Attorney General's as-yet-unformed personal opinion about whether the CRA prohibits that activity. Here, the Plaintiffs have been issued a letter, written by "[t]he secretary of state, in consultation with the attorney general," stating that the transfer they seek to make violates the CRA. NMSA 1978, § 1-19-34.4(A). While this letter apparently does not establish to an absolute certainty the Attorney General's position on the legality of FECA-to-CRA transfers it is at least sufficient to render "objectively justified" the Plaintiffs' "fear of real consequences" from the Attorney General. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006) (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)). And in any event, it demonstrates the risk that the Attorney General, specifically, poses to the Plaintiffs than the *Richardson* plaintiffs had.

There is no reason that this case should come out differently from *Richardson*. The constitutional injury here is the exact same as the one in *Richardson*: the Defendants – including the Attorney General, who was also a party to *Richardson* – have chilled, by the implicit threat of a criminal or civil enforcement action, a candidate (or potential candidate) with FECA funds from transferring those funds to a CRA account. Thus, under *Richardson*, the Attorney General's justiciability arguments fail.

### B. Even if *Richardson* Were Not on Point, This Case Would Still Be Justiciable and Would Not Warrant *Younger* Abstention.

Regardless of *Richardson*, a straightforward application of the justiciability and *Younger* abstention doctrines produces the same result.

#### 1. The Plaintiffs Have Standing to Seek to Enjoin the Attorney General.

As the Attorney General recognizes, Article III standing exists when there is "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision." *See Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008). Here, the Plaintiffs allege two injuries: the "imminent" injury of the imposition of criminal or civil sanctions and the "actual" (presently occurring) injury of a First Amendment chilling effect. *See* NMSA 1978, § 1-19-36 (providing that willful CRA violations are criminal misdemeanors punishable by up to a $1,000 fine and a year of imprisonment, which can be prosecuted only by the Attorney General or a district attorney); § 1-19-34.6 (providing for civil monetary penalties for CRA violations, which can be sued for only by the Attorney General or a district attorney).

The analysis as it relates to the formal sanctions is really one of ripeness,[7] as there is no serious argument that monetary sanctions and incarceration are not legitimate constitutional injuries, that the Attorney General's decision to enforce the Secretary of State's unconstitutional position does not give rise to "a causal relationship between the injur[ies] and the challenged conduct," or that an injunction against the Attorney General would fail to redress those injuries. The question, rather, is whether the Attorney General is sufficiently close to prosecuting the Plaintiffs to render the dispute ripe.

As far as the chilling effect already in progress goes, "[w]hile a plaintiff cannot satisfy the injury-in-fact requirement for a prior restraint claim through the mere allegation that the restraint has a subjective chilling effect on his speech or association, a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it arise[s] from an objectively justified fear of real consequences." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) (internal quotation marks omitted) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006)). The Plaintiffs' fears of "real consequences" are "objectively justified" by the fact that the Attorney General, in consultation with the Secretary of State,[8] issued a formal advisory opinion letter stating that a FECA-to-CRA transfer in excess of $11,000 would violate the CRA. *See* Letter from John Blair to Bill Canfield (dated July 19, 2017) (Doc. No. 1-2, Ex. M). There is

---

[7] Standing and ripeness are not truly distinct inquiries; the question of ripeness is really just the larger analysis behind whether an injury is "imminent." *See ACLU v. Johnson*, 194 F.3d at 1155 ("[I]f a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." (citation and internal quotation marks omitted)).

[8] The Attorney General takes umbrage at the Plaintiffs' "unsubstantiated speculation that the Secretary of State formed her opinion 'in consultation with' the Attorney General," supported as it is by their "bare recitation" of the statute providing that CRA advisory opinions "shall" be issued by "[t]he secretary of state, in consultation with the attorney general." Mot. (Doc. No. 26) at 12; NMSA 1978, § 1-19-34.4(A). However, the facts must be construed in favor of the Plaintiffs here, *see Warth v. Seldin*, 422 U.S. 490, 502 (1975), the fact that the CRA requires this consultation renders the Plaintiffs' fears of Attorney General-initiated enforcement objectively reasonable.

9

a direct causal relationship between that letter and the effect of the Plaintiffs being chilled from making such a transfer, and the relief sought – namely, an injunction against punishing the transfer – would redress this injury immediately.

        2.        <u>This Controversy Is Ripe for Adjudication</u>.

"[R]ipeness is peculiarly a question of timing," *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974), intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). The ripeness analysis boils down to two factors, "the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990) (citation and internal quotation marks omitted). The fitness-for-judicial-resolution factor typically asks "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed," *Richardson*, 64 F.3d at 1499 (citing *Sierra Club*, 911 F.2d at 1415), while the hardship factor "typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (10th Cir. 1992) (citation and internal quotation marks omitted).

Here, both factors are in the Plaintiffs' favor. The issues will never be more fully developed than they are now; the Plaintiffs have told the Defendants precisely what they intend to do – which is to transfer roughly a collection of campaign contributions from Rep. Pearce's FECA account to his CRA account – and the Secretary of State and Attorney General have issued a written opinion stating their conclusion that most of this contemplated transfer is illegal. Nothing more can be done by the Plaintiffs to ripen this controversy further.

Faced with this reality, the Attorney General makes the wrongheaded argument that Plaintiffs must go forward with an act he deems illegal and that he must actually initiate prosecution for Plaintiffs to have standing. *See* Mot. (Doc. No. 26) at 7. But, the Supreme Court has made clear that "'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (second and third alterations in original) (citation omitted)).

The hardship factor cuts even more strongly in the Plaintiffs' favor, as the "'direct and immediate' dilemma" that the Plaintiffs would face were this suit dismissed would be between forfeiting their First Amendment right to transfer the funds, on the one hand, and, on the other, risking not only a criminal or civil enforcement action, but incurring the negative publicity associated with disobeying the edict given by ostensibly neutral enforcers of the state election laws. It is for this reason that "[t]he principle that one does not have to await the consummation of threatened injury to obtain preventive relief is particularly true in the election context, where we [the Supreme Court] often have allowed preenforcement challenges to restrictions on speech." *Richardson*, 64 F.3d at 1501 (citations and internal quotation marks omitted) (second alteration in original).

Last, the "customary ripeness analysis outlined above is [] relaxed" in First Amendment cases. *Id.* at 1499 ("'First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill.'" (quoting 13A Wright & Miller, *Federal Practice and Procedure* § 3532.3, at 159 (1969)).

11

3. *Younger* Abstention Does Not Apply When No State-Level Judicial Proceedings Have Been Commenced.

Under the *Younger* abstention doctrine, a federal court should abstain from exercising jurisdiction over a case "when federal proceedings would (1) interfere with an ***ongoing*** state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (emphasis added); *Hunter v. Hirsig*, 660 F. App'x 711, 715 (10th Cir. 2016) (noting that, to warrant abstention under *Younger*, a state proceeding must satisfy "two subparts: the proceedings must be *ongoing* and they must be the *type* of proceedings afforded *Younger* deference" (emphases in original)). Thus, the doctrine requires that a state "judicial proceeding" – not merely a law-enforcement investigation, as suggested by the Attorney General – be "ongoing" at the time that the federal suit commences in earnest.

In this case, no state judicial proceedings have been initiated to this day. A mere investigation does not suffice, *see Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (holding that *Younger* applies only to state criminal proceedings and "particular state civil proceedings that are akin to criminal prosecutions"), and even if it did, there is no evidence that any investigation is currently underway (nor is it likely, given that the Plaintiffs have not yet made the disputed transfer). The case cited by the Attorney General for the proposition that "a federal court must abstain in deference to a state criminal investigation in the context of a campaign finance law investigation," Mot. (Doc. No. 26) at 9 (citing *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008)), does not actually say that at all – in that case, the plaintiffs, who were under investigation by their state's attorney general for campaign-finance violations, filed their own action in state court to enjoin the investigation, and only filed a federal suit after the

attorney general interlocutorily appealed a plaintiff-favorable ruling from the state trial court, *see Fieger*, 524 F.3d at 773-74.

This case simply does not fit the elements of *Younger* abstention as the Tenth Circuit has repeatedly described them.[9] There are no ongoing state proceedings, and in light of this fact, the Plaintiffs' choice of forum must be respected.

## II.    THE MOTION'S 12(b)(6) ARGUMENT SIMPLY REPEATS ITS JUSTICIABILITY ARGUMENTS.

The bulk of the Motion's two-and-a-half-page section on failure to state a claim is devoted to outlining the Rule 12(b)(6) standard in general terms, with only the final four paragraphs of the section actually dealing with the facts of this case. *See* Mot. (Doc. No. 26) at 11-13. The little analysis that exists is a pure repackaging of the Motion's justiciability arguments. The Attorney General makes no arguments and cites no authority on either the First Amendment or the Equal Protection Clause, but, rather, merely asserts that "the factual basis for including the Attorney General in the suit cannot be found in the Complaint." Mot. (Doc. No. 26) at 12.

The Complaint does in fact make it very clear why the Attorney General is named: the Attorney General and Defendant Dianna Luce ("DA Luce") are the only individuals – including the Secretary of State – capable of bringing a civil or criminal enforcement action against the Plaintiffs, and such actions are exactly what the Plaintiffs seek to enjoin. *See* Complaint ¶ 13, at 5; *id.* ¶ 29, at 9; *id.* ¶ 68, at 24; NMSA 1978, §§ 1-19-34.6, -36(B). The fact that the CRA obligates the Attorney General to consult with the Secretary of State when the latter issues

---

[9] It should also be noted that the defendants in the *Richardson* case argued for *Younger* abstention. While Judge Parker avoided the issue in his initial ruling dismissing the case as unripe, the case was ultimately resolved on the merits, indicating that abstention was deemed inappropriate. *See* Memo. Op. & Order at 15, No. 93-CV-1135 JAP/WWD (D.N.M. Aug. 4, 1994).

advisory opinions interpreting the CRA, *see* NMSA 1978, § 1-19-34.4(A), and the fact that, consequently, the Plaintiffs were able to allege that, "[o]n information and belief, Secretary Oliver's position was formed 'in consultation with' AG Balderas," Complaint ¶ 68, at 24, buttress the reasonableness of the Plaintiffs' fears as to the Attorney General, specifically – but they are by no means necessary to the core claims, which are based on the First Amendment and the Equal Protection Clause.  Unless the Attorney General can show that the announced position of the Secretary of State is constitutional – or, perhaps, unless he is willing to disclaim entirely any intent to initiate an enforcement action against the Plaintiffs based on their upcoming FECA-to-CRA transfer – he cannot prevail on his Rule 12(b)(6) motion.

### III.     THE MOTION IMPROPERLY SEEKS DISMISSAL ON IMMUNITY GROUNDS.

The Attorney General argues that the "claims against the attorney general in his individual capacity are barred by prosecutorial and qualified immunity," right before conceding that the "Plaintiffs do not identify any count in which they seek relief from the Attorney General in his individual capacity."  Mot. (Doc. No. 26) at 13 (all-caps omitted).

The Attorney General is apparently bothered by the inclusion, in the caption, of the individual capacities of the Secretary of State and the Attorney General.  The Plaintiffs did this because (1) while it is inappropriate to name additional *parties* as defendants to a suit when there are no claims against them, the Plaintiffs are not aware of any rule prohibiting the naming of a defendant with claims against it in one capacity from being named in another capacity against which there are currently no claims, but against which claims might foreseeably arise; (2) in light of the Attorney General and the Secretary of State, unlike DA Luce, having been (a) parties to the *Richardson* case and thus bound by its declaratory judgment, and (b) participants in the issuance of the advisory opinion letter that necessitated the filing of this action, individual-

capacity claims for compensatory and punitive damages *could* be brought against those two Defendants, and were not simply because the Plaintiffs have no desire to complicate this case further; and (3) given the possibility that the Complaint will later be amended to add individual-capacity claims, the Plaintiffs thought it prudent to name the two potential individual-capacity Defendants in that capacity from the outset, both to ensure compliance with Rule 15(c)'s relation-back requirements and, on a more fairness- and efficiency-oriented level, to enable them to secure independent counsel, if warranted, at an earlier stage rather than a later one – an opportunity that the Defendants have already availed themselves of.  *See* Defendants' Joint Motion for an Enlargement of the Time to Serve a Responsive Pleading to the Complaint at 2 (Doc. No. 13) (filed Aug. 17, 2017) ("Plaintiffs' decision to sue Mr. Balderas and Ms. Toulouse Oliver in their individual capacities . . . ultimately [resulted in a] determin[ation] that each Defendant would be represented by different counsel from the Attorney General's Office . . . .").

Because of this, the Plaintiffs do not agree that individual-capacity claims would be barred by either prosecutorial or qualified immunity.  "Prosecutorial immunity typically does not attach to those actions that are primarily investigative or administrative in nature," and would not, for example, extend to any advice or consultation that the Attorney General might have given to the Secretary of State regarding her advisory opinion letter.  *Jennings v. Grayson*, 2017 WL 3835808, at *4 (D.N.M. Aug. 31, 2017); *see Mata v. Anderson*, 760 F. Supp. 2d 1068, 1090 (D.N.M. 2009) (noting that "[t]o qualify for absolute immunity [] an action must be 'closely associated with the judicial process,'" and that "advising police in the investigative phase of a criminal case" is not a protected function (quoting *Burns v. Reed*, 500 U.S. 478, 493, 495 (1991))).  Qualified immunity, on the other hand, limits liability to those situations where the defendant violates a "clearly established" right, meaning that "a reasonable person would have

known" that what he was doing was unconstitutional. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see A.M. v. N.M. Dep't of Health*, 148 F. Supp. 3d 1232, 1294 (D.N.M. 2015) ("To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right." (citing *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007))). Although, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point," it is likely that a final declaratory judgment by a federal district court entered *against the defendant's own predecessor*, declaring certain of his actions unconstitutional – such as the final judgement in the *Richardson* case, which was entered against the Secretary of State and the Attorney General – suffices to render a right clearly established. *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Attorney General's Motion should be denied.

Respectfully submitted,

PEIFER, HANSON & MULLINS, P.A.

By: */s/ Carter B. Harrison IV*
      Matthew R. Hoyt
      Carter B. Harrison IV
P.O. Box 25245
Albuquerque, NM 87125
Tel:   (505) 247-4800
Email: mhoyt@peiferlaw.com
       charrison@peiferlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of October, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic File:

Sean Cunniff
Office of the Attorney General
Assistant Attorney General
Post Office Drawer 1508
Santa Fe, NM 87504-1508
Tel: (505) 490-4829
Fax: (505) 490-4881
scunniff@nmag.gov

Nicholas M. Sydow
Office of the Attorney General
Assistant Attorney General
201 3rd Street NW, Suite 300
Albuquerque, NM 87102
Tel.: (505) 717-3571
Fax: (505) 490-4881
nsydow@nmag.gov

*Attorneys for Defendant Oliver*

Rebecca C. Branch
Office of the Attorney General
Assistant Attorney General
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Tel: (505) 490-4825
Fax: (505) 490-4881
rbranch@nmag.gov

*Attorney for Defendant Balderas*

Timothy J. Williams
Office of the Attorney General
Assistant Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504
Tel: (505) 490-4870
Fax: (505) 490-4881
twilliams@nmag.gov

*Attorney for Defendant Luce*

PEIFER, HANSON & MULLINS, P.A.

By: */s/ Carter B. Harrison IV*
        Carter B. Harrison IV