IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PEOPLE FOR PEARCE and STEVE E. PEARCE, U.S. Representative for New Mexico's Second Congressional District,<br><br>       Plaintiffs,<br><br>vs.<br><br>MAGGIE T. OLIVER, in her individual capacity and her official capacity as Secretary of State of the State of New Mexico; HECTOR H. BALDERAS, JR., in his individual capacity and his official capacity as Attorney General of the State of New Mexico; and DIANNA LUCE, in her official capacity as Fifth Judicial District Attorney of New Mexico,<br><br>       Defendants. | Case No. 2:17-cv-00752-JCH-SMV |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SECRETARY OF STATE OLIVER'S MOTION TO DISMISS CLAIMS AGAINST HER IN HER INDIVIDUAL CAPACITY AND CLAIMS FOR INJUNCTIVE RELIEF**

      Defendant Maggie T. Oliver ("the Secretary") is unclear in her descriptions of the two forms of relief she seeks in her Motion.[1] First, she seeks dismissal of all individual-capacity claims against her, while at the same time admitting that no such claims are currently alleged. It is ambiguous whether she merely wants the Plaintiffs to acknowledge that no individual-capacity claims currently exist, whether she seeks some symbolic gesture like striking the words "individual capacity" from the caption, or whether she is asking the Court for a preemptive strike against all such potential claims – resulting in a settlement-release-like ruling that all individual-

---

[1] Secretary of State Maggie Toulouse Oliver's Motion to Dismiss Claims Against the Secretary of State in Her Individual Capacity and Claims for Injunctive Relief (Doc. No. 36) (filed Oct. 5, 2017) ("Motion" or "Mot.").

capacity claims that *could have been* brought are dismissed with prejudice. Such relief is obviously entirely inappropriate.

Second, she states that "injunctive relief is unwarranted" and that the "claims for injunctive relief should be dismissed" because she has not yet been given the opportunity to voluntarily abide by a declaratory judgment covering the same subject matter as the proposed injunction. But it is not clear whether the Secretary is seeking denial of the Plaintiffs' request for a *preliminary* injunction – to which the Secretary's case law is categorically and explicitly inapplicable – or whether she merely seeks dismissal of the Plaintiffs' claim for a permanent injunction – in which case her request is either terminally wrongheaded (since a declaratory judgment *was* in fact entered against her office in *Richardson*,[2] and her argument in this case is just that circumstances have changed since then), or, at best, premature, given that discovery has not even begun in this case. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (holding that, for the plaintiff to prevail on a Rule 12(b)(6) motion, there need only be "'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations" (citation omitted)). Regardless of how the Motion's requests are interpreted, however, they are legally unsubstantiated, and the Court should deny them in their entirety.

I.     **INJUNCTIVE RELIEF -- BOTH PRELIMINARY AND PERMANENT** – **IS APPROPRIATE IN THIS CASE.**

The Secretary's basic argument is that, because she is a state official tasked with enforcing a criminal statute, the Court should enter only a declaratory judgment, and not an injunction, against her – and that an injunction should only be issued if she defies the Court's declaratory judgment. *See* Mot. at 11-12 (quoting *Wooley v. Maynard*, 430 U.S. 705 (1977)).

---

[2] *New Mexicans for Bill Richardson v. Gonzales*, Case No. 93-CV-1135-JAP-RLP (D.N.M.) (Parker, J.) ("*Richardson*").

An anachronistic creation of the early development of the *Younger*[3] doctrine, there is a general presumption against permanently enjoining a state official's enforcement of a criminal statute, but this presumption (a) does not apply at all to preliminary injunctions; and (b) can be overcome by a showing of exceptional circumstances and clear necessity, a standard that is likely satisfied already in light of the *Richardson* judgment, and that may be further bolstered by facts uncovered during discovery.  Given that, at the motion-to-dismiss stage, the Court must accept as true all nonconclusory factual allegation, view those allegations in the light most favorable to the Plaintiffs, and draw all reasonable inferences in the Plaintiffs' favor, it is beyond "plausible" that the Plaintiffs will overcome the anti-injunction presumption (to the extent it applies) in this case.[4]  *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003).

### A. The Presumption Against Enjoining Criminal Prosecutions Does Not Apply to Preliminary Injunctions.

It is no more difficult to obtain a preliminary injunction against a state official than it is to obtain one against anyone else.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975) ("We now hold that on the facts of this case the issuance of a preliminary injunction is not subject to the restrictions of *Younger*.").  In fact, the Secretary (along with the Attorney General and the Second Judicial District Attorney) is ***at this very moment*** under a preliminary injunction that prohibits her from enforcing certain provisions of the CRA, *see Republican Party of N.M. v. King*, No. 11-CV-0900-WJ-KBM (D.N.M. Jan. 5, 2012) (Johnson, J.) (Doc. No. 38), and the

---

[3] *Younger v. Harris*, 401 U.S. 37 (1971).

[4] Courts are divided about whether the Rule 12(b)(6) or 12(b)(1) standard applies to *Younger* abstentions.  Even if the Court analyzes the *Younger* issues under Rule 12(b)(1), that provision, while less deferential to the allegations in the Complaint than Rule 12(b)(6), creates a concomitant entitlement to adequate discovery.  *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("'When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.'  Although a district court has discretion in the manner by which it resolves an issue of subject matter jurisdiction under Rule 12(b)(1), a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant." (citations omitted)).

Tenth Circuit has affirmed that injunction, *see* 741 F.3d 1089 (10th Cir. 2013), with neither court making any mention of the injunction being disfavored or subject to higher-than-usual standards.

To understand the excerpt from *Wooley* quoted in the Motion, *see* Mot. at 11-12, the line of Supreme Court cases leading up to *Wooley* must briefly be described. In 1971, the *Younger* Court issued its groundbreaking holding that a federal court ordinarily – meaning absent a showing of bad faith or harassment – may not enjoin ongoing state-level criminal proceedings, even if the law being prosecuted is unconstitutional. A companion case of *Younger*'s issued on the same day, *Samuels v. Mackell*, 401 U.S. 66 (1971), extended the *Younger* holding to declaratory relief as well, creating a more generalized abstention doctrine.[5] Both of those cases involved criminal prosecutions that had been ongoing when the federal complaint was filed and both purported to reserve judgment on the question of whether abstention would still be appropriate when a state prosecution was commenced after the filing of the federal complaint.

Three years later, in *Steffel v. Thompson*, 415 U.S. 452 (1974), that question was answered with regard to declaratory relief – but not injunctive relief. *Steffel* involved a plaintiff who had been threatened with prosecution for distributing anti-Vietnam War handbills, and who sued the state in federal court both for a declaratory judgment that the law in question was unconstitutional and for an injunction prohibiting the state from enforcing it. *See id.* at 455-56. The district court denied his requests under *Samuels* and *Younger*, respectively, and, for unclear reasons, the plaintiff appealed only the denial of declaratory relief. *See id.* at 456 & n.6. In a unanimous opinion written by Justice Brennan, the Court held that *Samuels* did not apply when state-level prosecution was threatened but not actually initiated, and that a plaintiff could thus

---

[5] *Samuels* is the case that first declared that "the practical effect of the two forms of relief [(declaratory and injunctive)] will be virtually identical," and it was referring to the fact that both forms interfere with the state's administration of its laws – not to the fact that both forms are equally helpful to the plaintiff. *Id.* at 73.

file a federal suit for declaratory judgment against state officials in such circumstances. The crux of *Steffel*'s analysis was that "the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding,'" *id.* at 462 (citation omitted), but the opinion also relied heavily on the less-intrusive and more cooperative nature of a declaratory judgment as compared to an injunction, implying – but not expressly declaring – that abstention might be more appropriate when dealing with requests for injunctive relief, *see id.* ("When no state proceeding is pending and thus considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief."). Justice Rehnquist wrote a separate concurring opinion expressing his view that, unlike declaratory relief, injunctive relief should be unavailable even when no state-level prosecution has commenced. *See id.* at 480-81 (Rehnquist, J., concurring).

A year later, in *Doran*, the Supreme Court addressed a case where the plaintiff had filed a pre-prosecution suit against state officials and then moved for a preliminary injunction. 422 U.S. at 930-31. Justice Rehnquist, despite his concurrence in *Steffel*, authored the majority opinion holding that preliminary injunctions are not subject to *Younger*. He justified the result by reasoning that, even if a permanent injunction and a declaratory judgment are equally good for the plaintiff once they have been entered, those remedies issue only at the end of a case, leaving the plaintiff unprotected (and, by definition, irreparably harmed) during the case's pendency; he also included substantial dicta suggesting that permanent injunctions would be barred by *Younger*:

> As we have already stated, the[ plaintiffs] were assuredly entitled to declaratory relief, and since we have previously recognized that '(o)rdinarily . . . the practical effect of (injunctive and declaratory) relief will be virtually identical,' we think that [they] were entitled to have their claims for preliminary injunctive relief considered

5

>without regard to *Younger*'s restrictions.  At the conclusion of a successful federal challenge to a state statute or local ordinance, a district court can generally protect that interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary.  But prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm.

*Id.* at 930-31 (citations omitted).

The *Doran* holding remains good law.  *See*, *e.g.*, *Summit Med. Assocs., P.C. v. James*, 984 F. Supp. 1404, 1435 n.18 (M.D. Ala. 1998) ("In *Doran*, the Supreme Court held that preliminary, as opposed to permanent, injunctive relief may be awarded even absent satisfaction of the stringent *Younger* standards."), *rev'd in part on other grounds sub nom. Summit Med. Assocs. v. Pryor*. 180 F.3d 1326 (11th Cir. 1999).  Although other aspects of this early line of cases were modified in later years,[6] it remains true that the *Younger* doctrine poses no obstacle to the attainment of a preliminary injunction.  The Secretary's argument is therefore plainly inapplicable to the present injunctive relief sought by Plaintiffs, and therefore provides no basis for dismissal of any of the Plaintiffs' claims.

>**B.     This Case Meets the Requirements for a Permanent Injunction, and in Any Event, Dismissal at This Early Stage of the Case Would Be Premature.**

Not only is the Plaintiffs' motion for preliminary injunction unaffected by the *Younger* doctrine, their claims for permanent injunction should proceed as well.  Two years after *Doran*, the Supreme Court addressed the question of whether, when a plaintiff brings suit in federal court to prevent a threatened but uninitiated state prosecution, he can obtain a permanent injunction against the state officials.

---

[6] *Younger* now applies to state-level civil-enforcement proceedings that "are akin to criminal prosecutions," *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013), and the timing question is no longer whether the filing of the federal complaint precedes the initiation of state prosecution, but whether "state criminal proceedings are begun against the federal plaintiffs . . . before any proceedings of substance on the merits have taken place in the federal court," *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

In *Wooley v. Maynard*, 430 U.S. 705 (1977), a New Hampshire Jehovah's Witness had been successfully prosecuted three times in a period of five weeks for covering up the "Live Free or Die" motto on his car's license plate. After the last conviction, he filed suit in federal court to prevent future prosecutions, winning a declaratory judgment and a permanent injunction against the state officials tasked with enforcing the law. Writing that the presumption is "not an absolute policy and in some circumstances injunctive relief may be appropriate," the Court affirmed the permanent injunction. *Id.* at 712. The Court held that, "[t]o justify [a permanent injunction against enforcing a state criminal law,] there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Id.* In that case, the Court was persuaded by two factors that this standard was met: the successive prosecutions of the plaintiff, and the fact that the state's law threatened such a large swath of the plaintiff's mundane, day-to-day conduct – effectively putting him at risk every time he got into his car. *See id.* Importantly, however, there was no indication that the New Hampshire officials would have been unwilling to abide by a declaratory judgment of unconstitutionality, nor did the criminal statute in question contain remotely harsh penalties. Nonetheless, the Court was "unwilling to say that the District Court was limited to granting declaratory relief." *Id.*

Few cases since *Wooley* have expounded upon what the requirements of "exceptional circumstances" and "a clear showing . . . [of] necess[ity]" mean, and those cases that have tend to interpret them as not setting a particularly high bar. The Tenth Circuit appears to have only addressed the standard once, in an unpublished opinion in which the plaintiff, a criminal defendant in an assault case, had launched an online harassment campaign against his alleged victim and the victim's girlfriend. The defendant-prosecutor then briefly charged the plaintiff

7

with retaliation against a witness (an application of the law that may or may not have even been unconstitutional) and then dropped that case voluntarily soon after. *See Blazier v. Larson*, 443 F. App'x 334, 335-36 (10th Cir. 2011). Affirming the dismissal of the entire case, the court noted that, unlike the plaintiffs in *Wooley*, who in the absence of an injunction would have had "to give up 'their ability to perform the ordinary tasks of daily life which require an automobile'" in order to avoid future prosecution, "[n]othing so extensively intrusive into daily life activities is remotely involved here." *Id.* at 337 (quoting *Wooley*, 403 U.S. at 712).

In *Ealy v. Littlejohn*, 569 F.2d 219 (5th Cir. 1978), the Fifth Circuit was "satisfied that exceptional circumstances and the necessity of federal relief ha[d] been amply demonstrated" in a case in which a grand jury subpoenaed extensive internal records of a plaintiff-civic organization and then the presiding grand-jury judge ordered those records released to the public. *Id.* at 234. The Fifth Circuit noted that an injunction against additional disclosures "would not reflect negatively on the ability of state courts to pass on constitutional issues, nor jeopardize [the state's] interest in the enforcement of its laws and smooth functioning of its judicial process," and that the plaintiffs should "not have to resort to a [] state court to redress this unconstitutional abuse of the [state-court] grand jury process." *Id.* And most recently, in *Griffin v. Bryan*, 30 F. Supp. 3d 1139 (D.N.M. 2014), a judge of this District granted a permanent injunction against state officials' enforcement of a First Amendment-violating ordinance without conducting any *Younger* analysis. *See id.* at 1200.

Like courts, legal commentators also seem skeptical that the standard is all that high. *See*, *e.g.*, 17B Wright & Miller, *Federal Practice and Procedure* § 4253 (3d ed.) ("Ordinarily the federal plaintiff will be fully protected by a declaratory judgment and no injunction will be necessary, but if there is no pending state prosecution, either a preliminary or a permanent

8

injunction can be given on a proper showing." (footnotes omitted)); Charles Alan Wright & Mary Kay Kane, *Law of Federal Courts* § 52A, at 344 & n.40 (7th ed. 2011) (eliding the exceptional-circumstances requirement entirely); John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 2.14(d), at 123-24 (7th ed. 2004) ("Whether a federal injunction (as opposed to declaratory relief) would be allowed in such circumstances might appear to be a much more difficult issue given the distinctions the Supreme Court has drawn between the cases involving the less intrusive declaratory judgments versus the injunctive remedy, the Supreme Court has allowed injunctions when the state criminal prosecution is not pending." (footnotes omitted)); Erwin Chemerinsky, *Federal Jurisdiction* § 13.3, at 843 (5th ed. 2007) (("The prevailing view in the lower courts is that permanent injunctions are allowed in the absence of ongoing state proceedings.").

 Here, several factors establish exceptional circumstances and the clear need for an injunction. First, a final declaratory judgment ruling that the First Amendment forbids limiting expenditures of FECA funds in a New Mexico state race was entered against the Secretary in 1996.[7] *See Richardson*, Summary Judgment (Doc. No. 1-2, Ex. G). While the Secretary argues that her interpretation does not rely on the statutory subsection struck down by Judge Parker, she has nonetheless come to nearly the exact same end result – a bar on FECA funds that is unconstitutional regardless of whether it arises from the plain language of one statutory provision or the Secretary's tortured interpretation of another. When enough time has passed, there will always be some basis for a motivated party to distinguish a declaratory judgment by pointing out how circumstances have changed between the time of the judgment and now. What the

---

[7] *See Restatement (Second) of Judgments* § 36 cmt. e (1982) ("The determination in [official-capacity suits] is therefore binding on the governmental body of which he is an official and on his successors in office . . . .").

9

Secretary's position shows is that she is that she is apt to be motivated to find reasons to disregard a second declaratory judgment, as well.

Second, far from the Defendants' protestations that an injunction will keep them from conducting legitimate investigation and monitoring, the injunction that the Plaintiffs have requested will "not reflect negatively on the ability of [the Secretary] to pass on constitutional issues, nor jeopardize [the state's] interest in the enforcement of its laws." *Ealy*, 569 F.2d at 234. The only prosecutorial or civil-enforcement options that would be closed off to the Secretary are the unconstitutional ones, leaving her with the simple, easy-to-understand dictate that she regulate FECA-raised money the same way she regulates CRA-raised funds.

Third and most important, more so even than the plaintiff in *Wooley*, the Plaintiffs' inability to use their FECA funds hampers nearly every aspect of their operations, "extensively intru[ding] into [their] daily [] activities" and potentially imperiling their campaign. *Blazier*, 443 F. App'x at 337 (10th Cir. 2011). The Plaintiffs currently have half the resources available to them that they should have – there is roughly $1M in Pearce for New Mexico and about the same amount locked inaccessibly away in the People for Pearce account – which affects almost all of their decisionmaking. *See* Testimony of Andrea Todd-Goff at the Court's Hearing on the Plaintiffs' Motion for Preliminary Injunction (given Oct. 16, 2017); Declaration of Andrea Todd-Goff in Support of Plaintiffs' Motion for Preliminary Injunction ¶¶ 13-16, at 5-6 (Doc. No. 16-2) (filed Oct. 31, 2017); Morgan Lee, *Pearce Raises $1 Million While Legal Battle for Other Money Continues*, Las Cruces Sun-News (Oct. 5, 2017), *available at* http://www.lcsun-news.com/story/news/politics/2017/10/05/pearce-raises-1-million-while-legal-battle-other-money-continues/737857001/ (last visited Oct. 19, 2017).

Last, dismissal would be unwarranted at this stage of the case even if the above factors were absent. Discovery has not yet begun, and numerous potential factual developments could end up making the exceptional-circumstances analysis easy (*e.g.*, if evidence were uncovered showing that the Secretary's interpretation of the CRA was politically motivated). The Complaint contains "'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations," and the Court must therefore not dismiss the claims under Rule 12(b)(6). *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citation omitted). Even if the Court were to analyze the question under Rule 12(b)(1), *see supra* note 4, where "jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) of the Federal Rules of Civil Procedure or rule 56 of the Federal Rules of Civil Procedure." *Navajo Health Found. Sage Mem. Hosp., Inc. v. Burwell*, 2015 WL 12859580, at *10 (D.N.M. Dec. 14, 2015) (citations omitted); *see Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999) (holding that a court "must convert a Rule 12(b)(1) motion to one under Rule 12(b)(6), or for summary judgment, [i]f the jurisdictional question is intertwined with the merits of the case" (alteration in original) (internal quotation marks and citation omitted)).

## II. THE COURT SHOULD NOT PREEMPTIVELY DISMISS INDIVIDUAL-CAPACITY CLAIMS THAT HAVE NOT YET BEEN ALLEGED.

The Secretary argues that "the Court should dismiss any claims against the Secretary of State in her individual capacity," Mot. at 2, while at the same time conceding that the "complaint contains no claims or allegations against the Secretary of State in her individual capacity," Mot. at 3, and contending that "[e]ven if Plaintiffs could amend their complaint to assert claims against the Secretary in her individual capacity, such claims would be futile," Mot. at 1. The Secretary is apparently seeking dismissal with prejudice of all potential individual-capacity

11

claims that *could be* brought against her. But the Secretary must wait for the Plaintiffs to actually allege such a claim – or at least wait for them to move to amend their complaint to add one – before they can argue for the claim's dismissal or for a denial of a motion to amend on futility grounds. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At th[e motion-to-dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" (emphasis in original)).

The Secretary's motion is equivalent to a defendant in a two-count lawsuit moving to dismiss with prejudice all other potential claims that were *not* brought in the complaint (*i.e.*, all legal causes of action in existence other than the two counts alleged). The Secretary likely believes this case is different because it involves her assertions of immunity – which she believes covers all her relevant conduct in this case, thus enabling the Court to enter a plenary 'immunity dismissal' – but the Plaintiffs do not currently know enough about her conduct, especially the "specific actions by the Secretary herself," to assess whether that conduct gives rise to additional claims and whether those claims are covered under her absolute or qualified immunity. *See* Mtn. at 1; *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (holding that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment").

Presumably, the Secretary would not be making this request had the Plaintiffs not included her individual capacity in the case caption; what's unclear is why she believes that inclusion allows her to make a motion that (again, presumably) she admits she would not be able to make were the case captioned differently. As previously explained, the Plaintiffs included the individual capacities of the Secretary and the Attorney General because (1) while it is inappropriate to name additional parties as defendants to a suit when there are no claims against

them, the Plaintiffs are not aware of any rule prohibiting the naming of a defendant with claims against it in one capacity from being named in another capacity against which there are currently no claims, but against which claims might foreseeably arise; (2) in light of the Secretary and the Attorney General, unlike DA Luce, having been (a) parties to the *Richardson* case and thus bound by its declaratory judgment, and (b) participants in the issuance of the advisory opinion letter that necessitated the filing of this action, individual-capacity claims for compensatory and punitive damages could be brought against those two Defendants, and were not simply because the Plaintiffs have no desire to complicate this case further; and (3) given the possibility that the Complaint will later be amended to add individual-capacity claims, the Plaintiffs thought it prudent to name the two potential individual-capacity Defendants in that capacity from the outset, both to ensure compliance with Rule 15(c)'s relation-back requirements and, on a more fairness- and efficiency-oriented level, to enable them to secure independent counsel, if warranted, at an earlier stage rather than a later one – an opportunity that the Defendants have already availed themselves of.  *See* Defs.' Joint Mot. for an Enlargement of the Time to Serve a Responsive Pleading to the Compl. at 2 (Doc. No. 13) (filed Aug. 17, 2017) ("Plaintiffs' decision to sue Mr. Balderas and Ms. Toulouse Oliver in their individual capacities . . . ultimately [resulted in a] determin[ation] that each Defendant would be represented by different counsel from the Attorney General's Office . . . .").

    For these same reasons, the Plaintiffs also do not agree that all possible future-asserted individual-capacity claims would be barred by either prosecutorial or qualified immunity (although some certainly would, when one considers the infinite universe of facts that could be strung together to create a claim).[8]  "Prosecutorial immunity typically does not attach to those

---

[8] A claim consists of a collection of facts coupled with a legal theory to give rise to a remedy.  *See Black's Law Dictionary* 281 (9th ed. 2009) (defining "claim" to mean "[t]he aggregate of operative facts giving rise to a right

13

actions that are primarily investigative or administrative in nature," and would not, contrary to the Secretary's suggestions,[9] extend to any advice or consultation that the Attorney General might have given to the Secretary of State regarding her advisory opinion letter. *Jennings v. Grayson*, 2017 WL 3835808, at *4 (D.N.M. Aug. 31, 2017); *see Mata v. Anderson*, 760 F. Supp. 2d 1068, 1090 (D.N.M. 2009) (noting that "[t]o qualify for absolute immunity, [] an action must be 'closely associated with the judicial process,'" and that "advising police in the investigative phase of a criminal case" is not a protected function (quoting *Burns v. Reed*, 500 U.S. 478, 493, 495 (1991))). Qualified immunity, on the other hand, limits liability to those situations where the defendant violates a "clearly established" right, meaning that "a reasonable person would have known" that what he was doing was unconstitutional. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). Although, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point," it is likely that a final declaratory judgment by a federal district court entered against the defendant's own predecessor, declaring certain of her actions unconstitutional – such as the final judgement in the *Richardson* case, which was entered against the Secretary[10] and the Attorney General – suffices to render a right clearly established. *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

---

enforceable by a court"). So it is not specific enough for the Secretary to say that, *e.g.*, "a First Amendment claim against the Secretary would fail here"; depending on the specific facts aggregated, a First Amendment claim might fail as a matter of law, be *prima facie* viable but barred by her immunity, or be viable and outside the scope of her immunity.

[9] The Secretary has only a single out-of-Circuit precedent, *Goldschmidt v. Patchett*, 686 F.2d 582 (7th Cir. 1982), for the proposition that prosecutorial immunity extends to opinion-letter writing. *See* Mot. at 7-8. That case has never been cited by either the Tenth Circuit or any court underneath it, and even that case involved an actual prosecutor – rather than a secretary of state arguably functioning in a prosecution-adjacent capacity – writing the letter.

[10] *See supra* note 7.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Motion in its entirety.

>Respectfully submitted,
>
>PEIFER, HANSON & MULLINS, P.A.
>
>By: */s/ Carter B. Harrison IV*
>     Matthew R. Hoyt
>     Carter B. Harrison IV
>P.O. Box 25245
>Albuquerque, NM 87125
>Tel:   (505) 247-4800
>Fax:   (505) 243-6458
>Email: mhoyt@peiferlaw.com
>       charrison@peiferlaw.com
>
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 19th day of October, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic File:

Sean Cunniff
Office of the Attorney General
Assistant Attorney General
Post Office Drawer 1508
Santa Fe, NM 87504-1508
Tel: (505) 490-4829
Fax: (505) 490-4881
scunniff@nmag.gov

Nicholas M. Sydow
Office of the Attorney General
Assistant Attorney General
201 3rd Street NW, Suite 300
Albuquerque, NM 87102
Tel.: (505) 717-3571
Fax: (505) 490-4881
nsydow@nmag.gov

*Attorneys for Defendant Oliver*

Rebecca C. Branch
Office of the Attorney General
Assistant Attorney General
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Tel: (505) 490-4825
Fax: (505) 490-4881
rbranch@nmag.gov

*Attorney for Defendant Balderas*

Timothy J. Williams
Office of the Attorney General
Assistant Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504
Tel: (505) 490-4870
Fax: (505) 490-4881
twilliams@nmag.gov

*Attorney for Defendant Luce*

PEIFER, HANSON & MULLINS, P.A.

By: */s/ Carter B. Harrison IV*
     Carter B. Harrison IV